William A. GRIFFIN, Jr., Appellant–Petitioner,

v.

Shari L. GRIFFIN, Appellee–Respondent.

No. 68A01–0611–CV–491.

Court of Appeals of Indiana.

Aug. 23, 2007.

Ralph E. Dowling, Muncie, IN, Attorney for Appellant.

## OPINION

SHARPNACK, Judge.

William A. Griffin, Jr., appeals the trial court's post-dissolution order regarding his military pension and veterans disability payments to his former wife, Shari L. Griffin. William raises three issues, which we consolidate and restate as whether the trial court's post-dissolution order regarding his military pension and veterans disability payments is clearly erroneous. We reverse and remand.

The relevant facts follow. William and Shari were married in 1985 and di-vorced in 2006. The dissolution decree, which incorporated the parties' property settlement agreement, provided in part:

F. *Pension or Other Deferred Income.* The Parties agree that [William] retired from active military service in the United States Air Force in December, 2005 and now receives One thousand five hundred and twenty-two dollars ($1,522.00) per month from a military pension. Note that [William] received his first military pension check on or about the 1st day of January, 2006.

The parties agree that [Shari] shall receive Fifty percent (50%) on [William's] military pension beginning in February, 2006. It is further agreed and understood by and between the parties that [Shari] shall be responsible for applying for direct pay of Fifty percent (50%) of the military pension from the United States Air Force. [Shari] agrees to apply for direct payment of 50% of the Military Pension from the United States Air Force within 30 days of the filing of the divorce decree in this cause. [William] shall execute any document necessary to assure direct payment of [Shari's] portion of the Military Pension. [William] shall deliver to [Shari] one-half (1/2) the amount he receives commencing on February 1, 2006. It is agreed by and between the parties that both [William] and [Shari] shall be responsible for payment of taxes due on their respective portion of [William's] military pension. [Shari] agrees to pay the taxes due on the amount she receives from the military pension.

The parties further agree that the Court shall retain continuing jurisdiction to assure compliance with the spirit and intent of [this] agreement.

Appellant's Appendix at 21–22.

In May 2006, Shari filed a petition for contempt, alleging that William had failed

to make the required pension payments to her. Both parties filed briefs on the issue. William argued that he had applied for disability benefits through the Veterans Administration ("VA") in August 2005, that he was notified in February 2006, that he was eligible for the VA disability benefits, and that in order to receive the VA disability benefits, the recipient must waive a portion of his military retirement benefits. According to William, he was required to waive $596.88 of his military retirement and his March 2006 military retirement was reduced by $596.88. He paid Shari 50% of the remaining $926.12 military pension (approximately $1522.00 less $596.88). William relied upon *Mansell v. Mansell*, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989) ("*Mansell I*"), for the proposition that VA disability benefits are not divisible marital property. Shari argued that *Mansell I* has been criticized, that the opinion on remand to the California Appellate Court, *Mansell v. Mansell*, 217 Cal. App.3d 219, 265 Cal.Rptr. 227 (1989) ("*Mansell II*"), *reh'g denied, cert. denied,* 498 U.S. 806, 111 S.Ct. 237, 112 L.Ed.2d 197 (1990), is more relevant to this case, and that William agreed to pay her 50% of his military benefits regardless of the source.

The trial court entered an order to "clarif[y]" the parties' property settlement agreement as follows:

> [William's] first argument is that courts have been granted the authority to treat disposable retired pay as community property, but have not been granted that same authority with regard to disability benefits. [William] points to *Mansell v. Mansell* (1989), 490 U.S. 581, 109 S.Ct. 2023 [104 L.Ed.2d 675] for this proposition. Secondly, [William] argues that the disability benefits are separate and distinct from the "military pension" referred to in the Settlement Agreement. [Shari's] position is that

> [William] may voluntarily agree to divide any funds received as a result of his military service, including any disability benefits, as those were not specifically excluded by the language of the Settlement Agreement.

> [William] is correct that the Court is limited in its authority to allocate disability benefits of one party to that party's former spouse. However, in the case at hand, [William] agreed to the division of his "military pension" in the Settlement Agreement. He is therefore barred from complaining about such a division. *See Mansell v. Mansell* (1989), 217 Cal.App.3d 219, 265 Cal.Rptr. 227.

> The issue becomes, then, whether the disability benefits received by [Shari] beginning in February, 2006, should be included as part of the "military pension." General rules applicable to construction of contracts govern construction of settlement agreements. *Kiltz v. Kiltz* (1999), Ind. Ct.App., 708 N.E.2d 600. Further, a document should ordinarily be interpreted to mean what on its face it purports to mean. I.L.E. Contracts, Section 111.

> In the Settlement Agreement, the language used to describe the money to be divided between the parties is "military pension." Twice in the subject paragraphs the phrase is capitalized, seemingly referring to a specific fund or source of the money. However, at least six times the phrase is not capitalized, creating the impression that the phrase is being used in a more generalized manner. The Court also notes that the parties make specific reference to the amount of money that is being received from the military pension.

> A pension may be generally described as money received after retirement for having worked in a specified field. In

this case, the pension may be described as "military," as [William] was receiving funds as a result of serving in the United States Air Force. Therefore, "military pension" could be interpreted to mean any income received after retirement, regardless of the name given such income.

Also included in the language of the Settlement Agreement is the following: The parties further agree that the Court shall retain continuing jurisdiction to ensure compliance with the spirit and intent of this agreement.

As pointed out previously, the parties specifically made reference to the $1,522.00 amount that [William] was receiving. [Shari] also had the knowledge that he had made application to modify the manner in which he would receive this total amount, as he had applied for disability benefits, waiving that portion of the pension he was already receiving.

The "spirit and intent" of the Settlement Agreement language was that [Shari] would receive fifty percent (50%) of [William's] military retirement income, regardless of the specific source of those funds. This was stated to be $1,522.00 at the time of execution of the Settlement Agreement, but the intent of the agreement was to allow [Shari's] amount to increase as the total pension benefits increased.

Parties are free to craft their own agreements, and those agreements are both contractual in nature and binding. *Niccum v. Niccum* (2000), Ind.App. 734 N.E.2d 637. To hold otherwise would be to negate the efforts of the parties and their attorneys in reaching an agreed settlement. The Court therefore determines that the language of the Settlement Agreement requires [William] to pay to [Shari] fifty percent (50%) of his retirement income from the military, including his disability payments.

Appellant's Appendix at 8–9.

■ On appeal, the issue is whether the trial court's post-dissolution order regarding William's military pension and veterans disability payments is clearly erroneous. The trial court entered findings of fact and conclusions thereon pursuant to Ind. Trial Rule 52(A). We may not set aside the findings or judgment unless they are clearly erroneous. *Menard, Inc. v. Dage-MTI, Inc.*, 726 N.E.2d 1206, 1210 (Ind.2000), *reh'g denied.* In our review, we first consider whether the evidence supports the factual findings. *Id.* Second, we consider whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind.1996). A judgment is clearly erroneous if it relies on an incorrect legal standard. *Menard*, 726 N.E.2d at 1210. We give due regard to the trial court's ability to assess the credibility of witnesses. *Id.* While we defer substantially to findings of fact, we do not do so to conclusions of law. *Id.* We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Yoon v. Yoon*, 711 N.E.2d 1265, 1268 (Ind.1999).

■ First, we note that Shari has not filed an appellee's brief. When the appellee fails to submit a brief, we need not undertake the appellee's burden of responding to arguments that are advanced for reversal by the appellant. *Hamiter v. Torrence*, 717 N.E.2d 1249, 1252 (Ind.Ct. App.1999). Rather, we may reverse the trial court if the appellant makes a prima facie case of error. *Id.* "Prima facie" is defined as "at first sight, on first appearance, or on the face of it." *Id.*

William argues that the trial court's order is clearly erroneous because, pursuant to *Mansell I,* the court could not order him to pay a portion of his VA disability payments to Shari. We begin by noting the history behind *Mansell I.* In *Mansell I,* the United States Supreme Court noted:

Members of the Armed Forces who serve for a specified period, generally at least 20 years, may retire with retired pay. The amount of retirement pay a veteran is eligible to receive is calculated according to the number of years served and the rank achieved. The amount of disability benefits a veteran is eligible to receive is calculated according to the seriousness of the disability and the degree to which the veteran's ability to earn a living has been impaired.

In order to prevent double dipping, a military retiree may receive disability benefits only to the extent that he waives a corresponding amount of his military retirement pay. Because disability benefits are exempt from federal, state, and local taxation ..., military retirees who waive their retirement pay in favor of disability benefits increase their after-tax income. Not surprisingly, waivers of retirement pay are common.

*Mansell I,* 490 U.S. at 583–584, 109 S.Ct. at 2025–2026 (internal citations and footnote omitted).

The Court noted that it had previously held in *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), that the federal statutes then governing military retirement pay prevented state courts from treating military retirement pay as community property. *Id.* at 584, 109 S.Ct. at 2026. In *McCarty,* the Court reasoned, based upon Congress' refusal to pass legislation that would have allowed former spouses to garnish military retirement pay to satisfy property settlements, that "Congress intended that military retirement pay reach the veteran and no one else." *Id.* (citing *McCarty,* 453 U.S. at 228–232, 101 S.Ct. at 2739–2741).

In direct response to *McCarty,* Congress enacted the Former Spouses' Protection Act, which authorized state courts to treat "disposable retired or retainer pay" as community property. *Id.* at 584, 109 S.Ct. at 2026 (quoting 10 U.S.C. § 1408(c)(1) (1982 ed. and Supp. V)). The statute defined "Disposable retired or retainer pay" as "the total monthly retired or retainer pay to which a military member is entitled," minus certain deductions. *Id.* at 584–585, 109 S.Ct. at 2026 (quoting 10 U.S.C. § 1408(a)(4)). "Among the amounts required to be deducted from total pay are any amounts waived in order to receive disability benefits." *Id.* at 585, 109 S.Ct. at 2026 (citing 10 U.S.C. § 1408(a)(4)(B)).

The Court noted that the "Act also created a payment mechanism under which the Federal Government would make direct payments to a former spouse who presented, to the Secretary of the relevant military service, a state-court order granting her a portion of the military retiree's disposable retired or retainer pay." *Id.* at 585, 109 S.Ct. at 2027. This direct payment mechanism was limited in two ways. *Id.* (citing 10 U.S.C. § 1408(d)). First, only a former spouse who was married to a military member "for a period of 10 years or more during which the member performed at least 10 years of service creditable in determining the member's eligibility for retired or retainer pay," 10 U.S.C. § 1408(d)(2), was eligible to receive direct community property payments. *Id.* Second, the Federal Government would not make community property payments that exceed 50 percent of disposable retired or retainer pay. *Id.* (citing 10 U.S.C. § 1408(e)(1)).

Following the enactment of the Former Spouses' Protection Act, Gerald Mansell sought to modify his *pre-McCarty* dissolution decree, which required him to pay half of his retirement pay and disability pay to his former wife. *Id.* at 586–587, 109 S.Ct. at 2027. The trial court denied Gerald's motion, the California Court of Appeals affirmed, and the California Supreme Court denied Gerald's petition for review. *Id.* at 586, 109 S.Ct. at 2027–2028. However, based upon the language of the statute, the United States Supreme Court held that "the Former Spouses' Protection Act does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits." [1] *Id.* at 594–595, 109 S.Ct. at 2031.

Following *Mansell I*, the statute in question has undergone revisions, but the basis for the *Mansell I* opinion remains in the statute—state courts do not have the authority to treat military retirement pay that has been waived to receive veterans' disability benefits as property divisible upon divorce. *See* 10 U.S.C. § 1408. Based upon the United States Supreme Court's *Mansell I* decision, we conclude that the trial court's order that William "pay to [Shari] fifty percent (50%) of his retirement income from the military, including his disability payments" is clearly erroneous.[2] *See, e.g., Severs v. Severs*, 837

---

1. Despite this holding, on remand, the California Court of Appeals affirmed the trial court's refusal to modify the dissolution decree. There, Gerald had specifically agreed in the original property settlement agreement that his former wife would receive fifty percent of his retirement pay and compensation from the Veterans' Administration accrued through Husband's employment with the United States Air Force. *Mansell II*, 217 Cal. App.3d at 223, 265 Cal.Rptr. 227. The court held that "[e]ven if [Gerald] were correct in contending the division of his gross retired pay would otherwise have been an act in excess of jurisdiction, he consented to said act when he signed the stipulated property settlement agreement, and he is therefore barred from complaining." *Id.* at 230, 265 Cal.Rptr. 227. Gerald's "stipulation to division of the gross retirement pay as community property obviate[d] any contention he might make that such division was an act in excess of jurisdiction." *Id.* at 231, 265 Cal.Rptr. 227. Further, the court held that there was no "mutual mistake of law that would support an attack on the judgment" because, at the time of the decree, the disability pay was community property. *Id.* at 234, 265 Cal.Rptr. 227. Thus, regardless of the holding in *Mansell I* that disability pay was not divisible marital property, the court affirmed the trial court's denial of Gerald's motion to modify the dissolution decree. *Id.* at 235–236, 265 Cal.Rptr. 227.

Here, William consented only to the division of his military pension in the original decree. The possibility of a waiver in exchange for disability payments was not mentioned in the original decree. Consequently, *Mansell II* is distinguishable.

2. We note that many other jurisdictions have addressed the resulting situation in this case. The majority view has been described as permitting the use of equitable remedies to prevent a spouse from unilaterally and voluntarily diminishing military retirement benefits awarded to the other spouse in the dissolution decree. *See, e.g., In re Marriage of Nielsen*, 341 Ill.App.3d 863, 275 Ill.Dec. 369, 792 N.E.2d 844, 849–850 (2003) (holding that "a party's vested interest in a military pension cannot be unilaterally diminished by an act of a military spouse" and the former husband's waiver of military pension in exchange for disability pension "unilaterally diminished [the former wife's] interest [and] constitute[d] an impermissible modification of a division of marital property" and remanding for a determination of whether the former husband was able to satisfy his obligation to the former wife with assets other than his disability benefits); *Johnson v. Johnson*, 37 S.W.3d 892, 897–898 (Tenn.2001) (holding that when a property settlement agreement divides military retirement benefits, the non-military spouse has a vested interest in his or her portion of those benefits and that vested interest cannot be unilaterally diminished by an act of the military spouse); *Hadrych v. Hadrych*, 140 N.M. 829, 149 P.3d 593 (Ct.App.

N.E.2d 498 (Ind.2005) (holding that the husband's future social security disability income was not a marital asset subject to equitable distribution).

For the foregoing reasons, we reverse the trial court's post-dissolution order and remand for proceedings consistent with this opinion.

Reversed and remanded.

MAY, J., and BAILEY, J., concur.

See also, 105 F.3d 660.

2007) (adopting the majority view), *cert. denied,* 141 N.M. 163, 152 P.3d 150 (2007). As neither party raised or briefed this issue, we express no opinion as to whether Indiana courts would adopt the majority view. Further, we express no opinion as to whether the use of such equitable remedies would be permitted under Ind.Code § 31–15–7–9.1, which prohibits the modification of property settlement agreements except in the case of fraud. *See, e.g., Strohmier v. Strohmier,* 839 N.E.2d 234, 237 (Ind.Ct.App.2005) (holding that modification of the dissolution decree was not permitted despite the former husband's bankruptcy discharge of $30,000 dissolution award to former wife).