Margarita **OVERHOLTZER,**
Appellant–Respondent,

v.

Mark S. **OVERHOLTZER,**
Appellee–Petitioner.

No. 34A05–0710–CV–574.

Court of Appeals of Indiana.

April 15, 2008.

Rehearing Denied June 24, 2008.

Dan J. May, Kokomo, IN, Attorney for Appellant.

Michael O. Bolinger, Kokomo, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Respondent, Margarita Overholtzer (Margarita), appeals the trial court's Order, interpreting the decree of dissolution in favor of Appellee–Petitioner, Mark S. Overholtzer (Mark).

We affirm.

### ISSUE

Margarita raises one issue on appeal, which we restate as: Whether the trial court properly decided that Margarita is not entitled to her share of the cost of living increases on Mark's retirement benefits from the date the trial court granted the dissolution of marriage to the date of Mark's actual retirement.

### FACTS AND PROCEDURAL HISTORY

Mark and Margarita were married in August of 1975; the marriage was dissolved on July 14, 1999. At the time of dissolution, Mark was a lieutenant colonel in the United States Air Force and had not yet satisfied the requirements for mandatory retirement. In the divorce decree, the trial court determined, in pertinent part:

> The [c]ourt acknowledges that each of the parties has contributed to the acquisition of the military retirement benefits. The [c]ourt determines that [Mark's] future military retired pay, if any, should be divided as "property" as opposed to "income" under I.C. [§ ] 31–9–2–98. The [c]ourt finds that [Mark's] retirement with the United States Air Force is vested. Therefore, [Margarita] shall be granted an interest in [Mark's] United States Air Force military disposable retired/retainer benefits [ ] as follows:
>
> a. [Mark] shall pay to [Margarita] upon his qualifying for retirement from the military service and actually retiring from the military service a sum to be calculated in the following manner:
>
> Fifty percent (50%) of the disposable retirement/retainer benefit that an Air Force Lieutenant Colonel would receive after 20 years active duty retiring in the month of August 1997.
>
> b. Since [Mark] is currently on active duty with the United States Air Force and is not currently eligible to retire due

to mandatory active duty service commitments, [Margarita's] interest in said retirement/retainer benefit shall be computed by the Department of Defense Finance Center as a "hypothetical retirement" on the date of marital separation. Any additional retirement/retainer benefit which accrues to [Mark] as a result of his continued active service with the United States Air Force, such as increases in military rank, increased time in service, and annual adjustments authorized for active duty personnel, shall be the sole and separate property of [Mark] and shall not be subject to any interest of [Margarita] and shall not be included in the calculation.

(Appellant's App. p. 11).

Following the dissolution of the marriage, Mark was promoted to full colonel. He continued to serve on active duty until his retirement on January 10, 2007. Upon his retirement, a dispute arose between the parties when drafting an appropriate qualified domestic relations order (QDRO) satisfactory to the United States Air Force. In order to comport with the United States Air Force requirements, the amount of retirement benefits to which Margarita would be entitled had to be expressed in terms of a percentage of Mark's current benefits. The parties established that if Mark had retired in August of 1997, he would have been entitled to $2,539.80 in monthly retirement benefits. Pursuant to the terms of the divorce decree, Margarita would be entitled to 50%, or $1,269.90 per month, which amounts to 18.6% of Mark's present monthly retirement benefits.

The disagreement between Mark and Margarita focused on whether Margarita is entitled to a greater percentage of the monthly retirement benefits. She contends that cost of living expenses have accrued since the divorce which, if imple-

mented, would increase her percentage of Mark's retirement benefits. Mark disagreed and argues that she is only entitled to 18.6% of his present retirement benefits with no cost of living benefits from the date of the dissolution until the date of his actual retirement. He concedes that after the date of his actual retirement, Margarita is entitled to 18.6% of the cost of living adjustments.

On February 27, 2007, Margarita filed her Motion for Issuance of QDRO and Motion to Determine Exact Percentage of Pension. On August 20, 2007, after hearing evidence, the trial court ruled:

On July 14, 1999, the [c]ourt entered a decree of dissolution providing that [Mark] shall pay to [Margarita] upon qualifying for his retirement from military service and upon his actual retirement, a sum calculated to be fifty (50%) percent of the disposable retirement/retainer benefit that an Air Force Lieutenant [Colonel] would receive in the month of August 1997. The [c]ourt finds that a Lieutenant [Colonel], with [Mark's] time and service, retiring from the United States Air Force, as a Lieutenant [Colonel], in the month of August 1997, would receive two thousand five hundred thirty nine and eighty cents ($2,539.80), in monthly retirement benefits. Accordingly, [Margarita] is entitled to a present monthly benefit in the sum of one thousand two hundred and sixty nine dollars and ninety cents ($1,269.90), upon [Mark's] actual retirement from the United States Air Force. Thereafter, [Margarita] is entitled to 18.6% of [Mark's] present retirement benefits, and 18.6% of any cost of living increase received by [Mark], in connection with his military pension, on or after February 1, 2007.

(Appellant's App. p. 6).

Margarita now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

Margarita disputes the trial court's interpretation of the parties' divorce decree with respect to Mark's retirement benefits. In dissolution proceedings, a "dissolution court may exercise continuing jurisdiction to reexamine a property settlement where 'the nature of which is to seek clarification of a prior order.'" *Fackler v. Powell,* 839 N.E.2d 165, 167 (Ind. 2005). This jurisdictional grant to a dissolution court is warranted as an extension of the necessary and usual powers essential to effectuate the marital dissolution, which includes the power to interpret the court's own decree. *Id.* Dissolution courts retain jurisdiction to interpret the terms of their property settlement agreements and to enforce them. *Id.* at 167–68.

Although a divorce decree may be considered final, in case of ambiguity, we must interpret the decree as we do any other contract. *Dewbrew v. Dewbrew,* 849 N.E.2d 636, 645 (Ind.Ct.App.2006). The interpretation and construction of contract provisions is a function for the courts. On appeal, our standard of review is essentially the same as that employed by the trial court. Unless the terms of a contract are ambiguous, they will be given their plain and ordinary meaning. *Niccum v. Niccum,* 734 N.E.2d 637, 639 (Ind.Ct.App. 2000). The terms of a contract are not ambiguous merely because controversy exists between the parties concerning the proper interpretation of terms. *Id.* Where the terms of a contract are clear and unambiguous, the terms are conclusive and we will not construe the contract or look at extrinsic evidence, but will merely apply the contractual provisions. *Id.*

In support of her argument, Margarita focuses on the decree's language, granting Mark "any additional retirement/retainer benefit as a result of his continued active service with the United States Air Force, such as increases in military rank, increased time in service, and annual adjustments for **active duty personnel.**" (Appellant's Br. p. 8) (emphasis in original). Distinguishing between active duty personnel and retired personnel, Margarita asserts that in accordance with the terms of the decree, Mark was only granted the cost of living adjustments for active duty personnel. As such, she claims a vested 50% interest in the annual cost of living adjustment for retired personnel, starting after the hypothetical retirement on the date of separation. In other words, Margarita is not asking us to grant her a share of Mark's retirement amount accrued after the dissolution; rather, she is merely requesting us to award her the cost of living adjustment on her 18.6 % share of Mark's retirement calculated as of the date of dissolution onwards. We disagree.

Analyzing the decree's language, it is clear that Margarita is entitled to a portion of Mark's retirement. Pursuant to Mark's concession, she is also granted cost of living adjustments applicable to her share of Mark's retirement from Mark's actual retirement date onwards. However, in construing its decree, the trial court recognized that Mark at the time of the dissolution of the marriage was on active duty and eligible to receive promotions with pay increases and cost of living adjustments. Taking this into account, the trial court specifically provided in the decree that "[a]ny additional retirement/retainer benefit which accrues to [Mark] as a result of his continued active service with the United States Air Force, such as increases in military rank, increased time in service, and annual adjustments authorized for active duty personnel, shall be the sole and separate property of [Mark]." (Appellant's App. p. 11). Based on this provision, it is clear that the trial court wanted to prevent Margarita from benefiting from

any increases in Mark's remuneration and retirement package after the dissolution of the marriage. As such, we conclude that Margarita cannot benefit from the cost of living adjustments from the date of separation to the date of Mark's actual retirement.

## CONCLUSION

Based on the foregoing, we find that the trial court properly decided that Margarita is not entitled to her share of the cost of living increases on Mark's retirement benefits from the date of the dissolution of marriage to the date of Mark's actual retirement.

Affirmed.

KIRSCH, J., and MAY, J., concur.