Victor J. BANDINI, Appellant–
Petitioner,

v.

Joann M. BANDINI, Appellee–
Respondent.

No. 49A04–1001–DR–26.

Court of Appeals of Indiana.

Oct. 8, 2010.

William O. Harrington, Harrington Law P.C., Danville, IN, Attorney for Appellant.

Russell T. Clarke, Jr., Emswiller, Williams, Noland & Clarke, P.C., Indianapolis, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issues

Victor Bandini ("Husband") appeals the trial court's order granting the show cause petition filed by JoAnn Bandini ("Wife") in this post-dissolution proceeding. For our review, Husband raises the following consolidated and restated issues: 1) whether the trial court properly concluded the parties' settlement agreement incorporated into the dissolution decree entitles Wife to fifty percent of Husband's gross military retirement pay, including amounts waived by Husband in order to receive Veterans' Administration' ("VA") disability benefits and Combat–Related Special Compensation ("CRSC"); 2) whether the trial court abused its discretion by finding Husband in contempt; and 3) whether the trial court abused its discretion by ordering Husband to pay part of Wife's attorney fees and declining to order Wife to pay part of Husband's attorney fees.

We conclude the parties' settlement agreement contemplates an equal division of Husband's gross military retirement pay, but pursuant to federal law, amounts previously waived by Husband as deductions from gross retirement pay were not properly divisible in the dissolution decree. We further hold that, consistent with Indiana and federal law, a military spouse may not, by a post-decree waiver of retirement pay in favor of disability benefits or CRSC, unilaterally and voluntarily reduce the benefits awarded the former spouse in a dissolution decree. Thus, Husband must compensate Wife for the reduction in her amount of retirement pay caused by Husband's post-decree waiver and election of CRSC. Finally, we conclude the trial court did not abuse its discretion by finding Husband in contempt nor in its award of attorney fees to Wife. Accordingly, we affirm in part, reverse in part, and remand.

### Facts and Procedural History

The relevant facts are largely undisputed. Husband and Wife married on August 14, 1971. Husband's military career spanned twenty-eight years in the Army and Army Reserve until his discharge in 1995. In 1997, Husband was awarded VA disability benefits for tinnitus and thirty-percent hearing loss. In 2003, Husband applied for additional disability benefits for post-traumatic stress disorder ("PTSD").

Husband and Wife separated on March 22, 2004, and the following day, Husband filed a petition for dissolution of marriage. On March 28, 2005, Husband and Wife filed their settlement agreement, which the

trial court approved on March 30, 2005 and incorporated into the decree dissolving the parties' marriage. The settlement agreement provided that "Wife shall have" certain property, including "½ (50%) of Husband's USAR military retirement/pension plan by QDRO, including survivor benefits." Exh. 1, at 5.

In November 2005, Husband was awarded disability benefits for PTSD. On December 1, 2007, the Defense Finance and Accounting Service ("DFAS") mailed Wife a letter stating she would begin receiving a portion of Husband's retirement pay within ninety days after the date Husband would begin receiving retirement pay. Husband turned sixty years old on January 5, 2008, and thus became eligible to begin receiving retirement pay. In February 2008, Husband received his first payment of retirement pay, without any deduction for Wife's share. DFAS also issued Husband an account statement providing that as of March 3, 2008, his retirement pay would be computed as follows: gross pay of $2,238.00, less VA Waiver of $240.71 and SBP Costs of $145.47, for taxable income of $1,851.82; less federal income tax withheld of $60.15, for net pay of $1,791.67. Exh. E. The "VA Waiver" was a deduction against gross pay for Husband's VA disability benefits, and the "SBP Costs" were a premium for a survivor benefit of which Wife was the beneficiary. On March 3, 2008, DFAS mailed Husband an account statement providing that as of April 1, 2008, his retirement pay would be computed as follows: gross pay of $2,238.00, less VA Waiver of $240.71, SBP Costs of $145.47, and a "former spouse deduction" of $925.91, for net pay of $925.91. Exh. 7. Thus, Wife would begin receiving payments of $925.91, and pursuant to the former spouse deduction, Husband's net pay would also be $925.91.

In March 2008, Husband applied for CRSC, following a change in the law that made Husband eligible for CRSC starting on January 1, 2008. Husband's eligibility for CRSC was based on his "[r]eceiv[ing] VA compensation for combat-related disabilities that result in offset to military retired pay." Exh. 23. On April 1, 2008, Wife received her first payment from DFAS in the amount of $925.91, and received that same amount in each of the following three months. On May 14, 2008, the Army mailed Husband a letter informing him of his initial approval for CRSC for a combat-related disability of sixty percent. On June 11, 2008, DFAS mailed Husband a letter that informed him his CRSC payment would be $921 per month, retroactive to February 2008, and an election form that stated "CRSC is nontaxable and is not subject [sic] the provisions of the Uniformed Services Former Spouse Protection Act." Exh. D. Husband then made an election, on June 24, 2008, to "authorize DFAS to recoup all CRDP [concurrent retirement and disability] payments previous [sic] paid from my retroactive CRSC payment." Id. In effect, in order to receive CRSC, Husband elected to waive a larger amount of his retirement pay than he had previously waived in favor of VA disability benefits.

On July 15, 2008, DFAS mailed Husband an account statement providing that as of August 1, 2008, his retirement pay would be computed as follows: gross pay of $2,249.00, less VA Waiver of $1,006.00, SBP Costs of $146.19, and a former spouse deduction of $548.40, for net pay of $548.41. Thus, as of August 2008, Husband's and Wife's net shares of retirement pay were reduced to $548 each per month. However, Husband began receiving a CRSC payment of $1,006 monthly, as reflected in a CRSC pay statement issued by

DFAS and dated August 21, 2008.[1] On September 9, 2008, Wife's attorney mailed Husband a letter demanding payment of the difference between half of Husband's gross retirement pay and the amounts Wife was receiving from DFAS.

On April 23, 2009, Wife filed her petition for rule to show cause, arguing Husband was in contempt for depriving Wife of her share of military retirement pay as divided in the parties' dissolution settlement agreement. Wife argued she was entitled to fifty percent of Husband's "gross military retirement with no VA waivers, no disabilities, [or] anything taken out," transcript at 63, and requested the trial court order Husband to pay her the difference between that amount and the amount payable to her by DFAS. Husband filed a request for specific findings of fact and conclusions of law.

The trial court held an evidentiary hearing and, on December 29, 2009, entered its findings of fact, conclusions of law, and judgment. The trial court found and concluded in relevant part:

10. [Wife] was eligible to receive her fifty percent (50%) share ($1,119.00) of [Husband]'s retired pay (CRDP) also on February 1, 2008, but she did not receive her share from DFAS or from [Husband]. Her first payment from DFAS came in April 2008. . . .

11. [Husband] never paid [Wife] her fifty percent (50%) share of his monthly retirement benefits for February 2008 or March 2008.

* * *

21. [Husband] did not notify [Wife] of his election to receive CRSC benefits prior to signing the documents putting them in place.

* * *

28. [Wife] did not consent to [Husband]'s change in his military retirement benefits and the financial impact it had on her payments pursuant to the Decree.

* * *

49. [Husband] consented to the division of his military pension in the Decree. He did not advance, and [Wife] did not contemplate the possibility of [Husband]'s subsequent waiver of a portion of his retirement pay in exchange for disability payments that ultimately reduced her monthly income.

* * *

51. The Property Settlement Agreement demonstrates the clear intent that [Husband] and [Wife] would each . . . receive half (½) of [Husband]'s military retirement that was in place at the time of the Decree. [Husband]'s act of changing the amount of monthly, military pay [Wife] would receive resulted in an impermissible modification of the Decree, and [Husband] cannot unilaterally diminish [Wife]'s interest in the military pension without her consent.

* * *

57. The Court finds [Husband] in contempt for failing to pay to [Wife] 50% of the benefit he received for the months of February and March 2008, which is the period after he became qualified for benefits but before DFAS began paying to [Wife] her portion of the benefits.

58. The Court declines to find [Husband] in contempt for electing his CRSC benefit, as Congress provided him the authority to do so, and there was a

---

1. As of January 2, 2009, cost of living adjustments caused Husband's retirement pay and disability benefits to be computed as follows: gross pay of $2,361.00, less VA Waiver of $1,064.00, SBP Costs of $153.49, and former spouse deduction of $571.75, amounting to taxable income of $571.76.

genuine issue of law as to whether he would continue to owe [Wife] 50% of that benefit.

59.... While Federal Law may prohibit this Court from considering the VA waiver to be divisible marital property, Federal and State law are silent with regard to the treatment of CSRC [sic] benefits. Moreover, the parties may always agree to more than a Court may have the authority to order in their Property Settlement Agreement. While DFAS may not consider CSRC [sic] to be military pay that requires that separate checks be issued to [Husband] and [Wife], it is clear from the language of the Decree that the parties intended for [Wife] to share in 50% of the payments that [Husband] receives as a result of his retirement from the U.S. Army. This includes his CSRC [sic] benefit.

Appellant's Appendix at 10–15.

Thus, the trial court entered judgment in favor of Wife for $11,369.71, the arrearage it found Husband owed Wife as of September 2009, calculated as the difference between half of Husband's gross retirement pay up to that point and the amounts of retirement pay received by Wife from DFAS. The trial court also ordered Husband prospectively to "either pay [Wife] 50% of his CSRC [sic] benefit within ten (10) days of his monthly receipt of same, or convert his benefits back to CRDP payments during the next Open Enrollment period offered by DFAS." *Id.* at 15. In addition, the trial court ordered Husband to pay $3,500 of Wife's $6,466.79 in attorney fees incurred to prosecute the contempt action, and denied Husband's request for attorney fees. Husband now appeals.

*Discussion and Decision*

## I. Standard of Review

Pursuant to Husband's written request, the trial court entered specific findings of fact and conclusions of law. We therefore employ a two-tiered standard of review, first determining whether the evidence supports the findings, and second, whether the findings support the judgment. *Mueller v. Karns*, 873 N.E.2d 652, 657 (Ind.Ct. App.2007). We will not reverse the trial court's findings and judgment unless they are clearly erroneous. *Id.* Findings of fact are clearly erroneous where, without reweighing the evidence or judging witness credibility, the record lacks any facts or reasonable inferences from the evidence to support them. *Id.* The judgment is clearly erroneous when it is unsupported by the findings of fact and conclusions entered on the findings, *id.*, or where it relies upon an incorrect legal standard, *Menard Inc. v. Dage–MTI, Inc.*, 726 N.E.2d 1206, 1210 (Ind.2000). While we defer substantially to findings of fact, we do not do so for conclusions of law, which we review de novo. *Mueller*, 873 N.E.2d at 657.

## II. Military Retirement Pay and Disability Benefits

Before turning to Husband's claims, we review the pertinent legal background. In *Griffin v. Griffin*, 872 N.E.2d 653 (Ind.Ct. App.2007), this court explained:

In *Mansell* [*v. Mansell*, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989) ], the United States Supreme Court noted:

Members of the Armed Forces who serve for a specified period, generally at least 20 years, may retire with retired pay. The amount of retirement pay a veteran is eligible to receive is calculated according to the number of years served and the rank achieved. The amount of disability benefits a veteran is eligible to receive is calculated according to the seriousness of the disability and the degree to which the veteran's ability to earn a living has been impaired.

In order to prevent double. dipping, a military retiree may receive disability benefits only to the extent that he waives a corresponding amount of his military retirement pay. Because disability benefits are exempt from federal, state, and local taxation ..., military retirees who waive their retirement pay in favor of disability benefits increase their after-tax income. Not surprisingly, waivers of retirement pay are common.

*Mansell* [ ], 490 U.S. at 583–584 [109 S.Ct. 2023] (internal citations and footnote omitted).

The Court noted that it had previously held in *McCarty v. McCarty,* 453 U.S. 210 [101 S.Ct. 2728, 69 L.Ed.2d 589] (1981), that the federal statutes then governing military retirement pay prevented state courts from treating military retirement pay as community property. *Id.* at 584 [109 S.Ct. 2023]. In *McCarty,* the Court reasoned, based upon Congress' refusal to pass legislation that would have allowed former spouses to garnish military retirement pay to satisfy property settlements, that "Congress intended that military retirement pay reach the veteran and no one else." *Id.* (citing *McCarty,* 453 U.S. at 228–232 [101 S.Ct. 2728] ).

In direct response to *McCarty,* Congress enacted the Former Spouses' Protection Act, which authorized state courts to treat "disposable retired or retainer pay" as community property. *Id.* at 584 [109 S.Ct. 2023] ·(quoting 10 U.S.C. § 1408(c)(1) (1982 ed. and Supp. V)). The statute defined "Disposable retired or retainer pay" as "the total monthly retired or retainer pay to which a military member is entitled," minus certain deductions. *Id.* at 584–585 [109 S.Ct. 2023] (quoting 10 U.S.C. § 1408(a)(4)). "Among the amounts required to be deducted from total pay are any amounts waived in order to receive disability benefits." *Id.* at 585 [109 S.Ct. 2023] (citing 10 U.S.C. § 1408(a)(4)(B)).

The Court noted that the "Act also created a payment mechanism under which the Federal Government would make direct payments to a former spouse who presented, to the Secretary of the relevant military service, a state-court order granting her a portion of the military retiree's disposable retired or retainer pay." *Id.* at 585 [109 S.Ct. 2023]. This direct payment mechanism was limited in two ways. *Id.* (citing 10 U.S.C. § 1408(d)). First, only a former spouse who was married to a military member "for a period of 10 years or more during which the member performed at least 10 years of service creditable in determining the member's eligibility for retired or retainer pay," 10 U.S.C. § 1408(d)(2), was eligible to receive direct community property payments. *Id.* Second, the Federal Government would not make community property payments that exceed 50 percent of disposable retired or retainer pay. *Id.* (citing 10 U.S.C. § 1408(e)(1)). Following the enactment of the Former Spouses' Protection Act, Gerald Mansell sought to modify his pre-*McCarty* dissolution decree, which required him to pay half of his retirement pay and disability pay to his former wife. *Id.* at 586–587 [109 S.Ct. 2023]. The trial court denied Gerald's motion, the California Court of Appeals affirmed, and the California Supreme Court denied Gerald's petition for review. *Id.* at 586 [109 S.Ct. 2023]. However, based upon the language of the statute, the United States Supreme Court held that "the Former Spouses' Protection Act does not grant state courts the power to treat as property divisible upon divorce military retire-

ment pay that has been waived to receive veterans' disability benefits." *Id.* at 594–595 [109 S.Ct. 2023].

*Id.* at 657–58 (footnote and parallel citations omitted).

Legislation creating CRSC as a new type of disability benefit was enacted by Congress and became effective in 2003. The statute governing CRSC provides for a military retiree "who elects benefits under this section" to receive "a monthly amount for the combat-related disability of the retiree." 10 U.S.C. § 1413A(a). Such amount "may not exceed the amount of the reduction in retired pay that is applicable to the retiree for that month under [38 U.S.C. §§ 5304 & 5305]." 10 U.S.C. § 1413A(b)(2). The statute provides that CRSC payments "are not retired pay." 10 U.S.C. § 1413A(g).

### A. Interpretation of Property Settlement

■■■ Husband argues the trial court erred when it interpreted the parties' property settlement agreement to conclude the parties agreed to evenly split Husband's gross military retirement pay rather than fifty percent of the net or disposable portion of his retirement pay. In general, a dissolution court "retains jurisdiction to interpret the terms of its decree and decide questions emanating from its decree pertaining to its enforcement." *Fackler v. Powell,* 839 N.E.2d 165, 169 (Ind.2005). "Settlement agreements become binding contracts when incorporated into the dissolution decree and are interpreted according to the general rules for contract construction." *Bailey v. Mann,* 895 N.E.2d 1215, 1217 (Ind.2008). Unless the terms of a contract are ambiguous, courts will merely apply the terms, giving them their plain and ordinary meaning, and will not construe the contract or look at extrinsic evidence. *Overholtzer v. Overholtzer,* 884 N.E.2d 358, 361 (Ind.Ct.App.

2008). Terms are ambiguous if a reasonable person would find them subject to more than one interpretation, but are not ambiguous merely because the parties disagree concerning their proper interpretation. *Fackler v. Powell,* 891 N.E.2d 1091, 1096 (Ind.Ct.App.2008), *trans. denied.* "Interpretation of a settlement agreement, as with any other contract, presents a question of law and is reviewed de novo." *Bailey,* 895 N.E.2d at 1217.

Here, the parties' property settlement agreement provided Wife would receive fifty percent of Husband's "USAR military retirement/pension plan by QDRO, including survivor benefits." Exh. 1, at 5. The settlement agreement does not define "military retirement/pension plan" and makes no reference to disability benefits, even though Husband had been awarded VA disability benefits at the time of the agreement. The agreement is likewise silent as to any other amounts deducted from Husband's gross retirement pay. The agreement does not refer to *disposable* retirement pay or to the limitations on direct payments from the military to a former spouse under the Former Spouses' Protection Act, 10 U.S.C. § 1408. Neither is there any reference to anything outside of the agreement as controlling the meaning of the term "military retirement/pension plan." Accordingly, this term is not ambiguous, and we give it its plain and ordinary meaning without looking to extrinsic evidence.

■■■ The term "military retirement/pension plan" is broad and refers to Husband's retirement benefits as one unit. In the absence of any limiting language, we conclude this term encompasses Husband's gross retirement pay, before any deductions for SBP costs or amounts waived to receive VA disability benefits. *See Allen v. Allen,* 178 Md.App. 145, 941 A.2d 510, 516 (Md.Ct.Spec.App.2008) (con-

cluding the term "pension/retirement plans" included "all retirement benefits accrued as a result of appellant's military service"); *Johnson v. Johnson*, 37 S.W.3d 892, 896–97 (Tenn.2001) (concluding that, where "all military retirement benefits" was undefined, the term unambiguously included "all amounts to which the retiree would ordinarily be entitled as a result of retirement from the military," including amounts waived to receive disability benefits).[2] Therefore, the trial court correctly interpreted the parties' settlement agreement as contemplating an equal division of Husband's gross retirement pay.

## B. Pre–Decree Waivers of Retirement Pay

Husband argues that even if the trial court was correct, as we have concluded it was, to interpret the parties' settlement agreement as referring to an equal division of Husband's gross rather than net or disposable retirement pay, the trial court still erred by ordering Husband to pay Wife half of his gross retirement pay, including amounts waived by Husband in order to receive VA disability benefits and CRSC or deducted from gross retirement pay as SBP costs. For the reasons stated below, we agree with Husband as regards his pre-decree waivers and deductions from retirement pay but disagree as regards his post-decree waiver and election of CRSC benefits.

The U.S. Supreme Court in *Mansell* addressed a pre-decree waiver and held that state courts may not "treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits." 490 U.S. at 594–95, 109 S.Ct. 2023. *Mansell* involved a property settlement agreement, and the lower court judgment that *Mansell* reversed affirmed a denial of a request to modify the dissolution decree incorporating that settlement. *Id.* at 585–86, 109 S.Ct. 2023. *Mansell* also held more broadly that pursuant to the Former Spouses' Protection Act, 10 U.S.C. § 1408, state courts may treat "disposable retired pay" but not "total retired pay" as property divisible upon divorce. *Mansell*, 490 U.S. at 589, 109 S.Ct. 2023.[3] In addition to amounts waived to receive disability benefits, among the amounts required to be subtracted from total, or gross, retirement pay to yield disposable retirement pay are those "deducted because of an election under chapter 73 of this title to provide an annuity to a spouse or former spouse to whom payment of a portion of such member's retired pay is being made pursuant to a court order...." 10 U.S.C. § 1408(a)(4)(D). The annuity referred to is the Survivor Benefit Plan ("SBP"), *see* 10 U.S.C. §§ 1447 & 1448, such as Husband elected to provide for Wife in the present case and for the cost of which amounts are deducted from his gross retirement pay. *See In re Marriage of Strassner*, 895 S.W.2d 614, 616 (Mo.Ct. App.1995) (concluding it was error to not "subtract the monthly SBP premium as required by 10 U.S.C. § 1408(a)(4)(D)" in calculation of disposable retired pay).

In *Griffin*, this court applied *Mansell's* holding to a post-dissolution contempt peti-

---

**2.** One of the cases relied upon by Husband is easily distinguishable where the dissolution decree awarded the former spouse a percentage of "disposable retired military pay." *Jackson v. Jackson*, 319 S.W.3d 76, 82 (Tex. App.2010). That term is both defined by federal statute and narrower than the language Husband and Wife agreed upon here.

**3.** Notwithstanding the references to "community property" in this section of the opinion, *Mansell* was clear that "[t]he language of the [Former Spouses' Protection] Act covers both community property and equitable distribution States, as does our decision today." 490 U.S. at 584 n. 2, 109 S.Ct. 2023.

tion for enforcement of a property settlement agreement, where the parties agreed to division of the husband's "military pension," interpreted by the trial court to mean "any income received after retirement, regardless of the name given such income." 872 N.E.2d at 655–56. This court held that even though the husband consented in the settlement agreement to division of his military pension, the trial court still lacked authority, pursuant to *Mansell*, to treat as divisible property that portion of his retirement pay waived to receive disability benefits. *Id.* at 658 & n. 1.

Pursuant to *Mansell* and *Griffin*, Indiana trial courts lack authority to enforce even an agreed-upon division of property insofar as it divides amounts of gross military retirement pay that were, previously to the decree, waived to receive disability benefits or elected to be deducted from gross pay as SBP costs to benefit the former spouse. Here, the trial court ordered Husband to pay Wife an amount equal to half of his gross retirement pay, prior to any deductions for his VA waiver and SBP costs. This was error because Husband's election to receive VA disability benefits, as well as his election of a SBP annuity of which Wife was the beneficiary,

preceded the parties' dissolution decree.[4] We therefore reverse the trial court's judgment insofar as it orders Husband to pay Wife amounts of his gross retirement pay corresponding to half of his (1) VA waiver preceding his election of CRSC benefits, and (2) SBP costs.[5] We remand this case to the trial court for entry of an order consistent with this opinion, as explained in more detail below.

## D. Post–Decree Waiver

The question of post-decree waivers of retirement pay was not addressed in *Griffin*, where this court explicitly reserved the issue of whether, in future cases, "equitable remedies" could be used to "prevent a spouse from unilaterally and voluntarily diminishing," by a post-decree waiver of retirement pay, "military retirement benefits awarded to the other spouse in the dissolution decree." 872 N.E.2d at 658 n. 2. This court noted the "majority view" holding in the affirmative, but because "neither party raised or briefed this issue,"[6] we "express[ed] no opinion as to whether Indiana courts would adopt the majority view." *Id.* Here, by contrast, Wife's brief raises this precise issue and argues that, in this matter of first impression, this court should

---

**4.** As noted above, Husband was first awarded VA disability benefits in 1997 and applied for additional VA disability in 2003, prior to the 2004 decree. With regard to Husband's election of the SBP annuity in favor of Wife, the language of the settlement agreement providing Wife shall have half of Husband's "USAR military retirement/pension plan ... including survivor benefits," exh. 1, at 5, indicates the SBP was already elected or at least contemplated by the parties at the time of the decree.

**5.** We reach this conclusion with some reluctance, aware of the principle of Indiana law, cited by the trial court, that while "[c]ourts are bound to follow the law in determining what assets can be treated as property in

making a final disposition" of marital assets, "[p]arties are not so limited" and "[p]arties are free to divide their property in any way they choose...." *Myers v. Myers*, 560 N.E.2d 39, 43–44 (Ind.1990). Applicable as this principle is to matters of property division governed entirely by state law—as is true in the overwhelming number of cases—the U.S. Supreme Court's decision in *Mansell* and the clear terms of the Former Spouses' Protection Act preclude it from controlling the specific question presented in this case.

**6.** In *Griffin*, the wife did not file an appellee's brief, and thus the appeal was subject to the prima facie error standard. 872 N.E.2d at 656.

adopt the majority view that forbids a military spouse from using a post-decree waiver of retirement pay to unilaterally diminish the benefits awarded the other spouse in the dissolution. For the reasons explained below, we agree with Wife.

■ Initially we note that a number of states' courts have concluded *Mansell* and the Former Spouses' Protection Act do not preclude state courts from requiring a military spouse to compensate a former spouse when the latter's share of retirement pay is reduced by the military spouse's unilateral post-dissolution waiver of retirement pay in favor of disability benefits. *E.g., In re Marriage of Krempin*, 70 Cal.App.4th 1008, 83 Cal.Rptr.2d 134, 143 (1999); *In re Marriage of Warkocz*, 141 P.3d 926, 929–30 (Colo.Ct.App. 2006); *Black v. Black*, 842 A.2d 1280, 1285 (Me.2004); *Shelton v. Shelton*, 119 Nev. 492, 78 P.3d 507, 509–10 (2003); *Whitfield v. Whitfield*, 373 N.J.Super. 573, 862 A.2d 1187, 1192 (2004); *Hadrych v. Hadrych*, 140 N.M. 829, 149 P.3d 593, 597 (N.M.Ct. App.2006); *Resare v. Resare*, 908 A.2d 1006, 1009–10 (R.I.2006).[7] The Supreme Court in *Mansell* recognized that domestic relations are preeminently matters of state law, and state authority in this area will not be displaced unless preemption is "positively required by direct enactment." 490 U.S. at 587, 109 S.Ct. 2023 (quotation omitted). The *Mansell* holding that state courts may not "treat as property divisible *upon divorce* military retirement pay that *has been* waived to receive veterans' disability benefits," *id.* at 594–95, 109 S.Ct. 2023 (emphasis added), refers to a pre-dissolution waiver of benefits, as was at issue in *Mansell,* and does not imply that a post-dissolution waiver need be treated the same way. *See, e.g., Krempin,* 83 Cal.

Rptr.2d at 139. The Former Spouses' Protection Act also provides that it shall not be "construed to relieve a member of liability for the payment of ... other payments required by a court order" on the grounds that payments made out of disposable retired pay have exceeded fifty percent of the member's disposable retired pay. 10 U.S.C. § 1408(e)(6). Thus, while Husband's election of CRSC was a right provided him by Congress, federal law did not give Husband the authority to simultaneously invoke that right *and* reduce the amounts received by Wife under the terms of the dissolution decree.

■ Further, Indiana law prohibits Husband's election of CRSC from defeating the finality of the dissolution decree and the intent of the parties' settlement agreement incorporated therein. The parties' agreement provided that "[n]o modification or waiver of any of the terms of this Agreement shall be valid, unless in writing and executed by both parties hereto." Exh. 1, at 7. However, by reducing the amount of retirement pay Wife was receiving, and was permitted to receive, directly from DFAS, Husband's election upset the delicate balance of property rights in which Wife acquired a vested interest when the agreement was incorporated into the final dissolution decree. *See Dusenberry v. Dusenberry,* 625 N.E.2d 458, 461 (Ind.Ct.App.1993) (noting a partial modification of a property settlement agreement will likely upset the entire division of property, in which both assets and liabilities must be considered, and cause an inequitable result); *see also* Ind.Code §§ 31–15–2–17, 31–15–7–9.1 (providing that a final division of marital property may not be modified, except as prescribed by the agreement itself or subsequent consent of the

---

7. We note that some state courts have reached a contrary conclusion. *E.g., In re Marriage of Pierce*, 26 Kan.App.2d 236, 982

P.2d 995, 998 (1999); *Youngbluth v. Youngbluth*, 6 A.2d 677, 2010 WL 2139256, at ¶ 15–16 (Vt., May 28, 2010).

parties, or in the event of fraud). Thus, Husband's action violated strong Indiana policies favoring the finality of marital property divisions. *See Myers*, 560 N.E.2d at 43–44 (noting "[p]roperty settlement agreements in dissolution of marriage cases are encouraged," and concluding Husband's "military pension benefits were part of an agreed property settlement and were not subject to modification by the court"); *Dusenberry*, 625 N.E.2d at 461 ("A strong policy favors the finality of marital property divisions...."). In similar circumstances, a number of states' courts have concluded a former spouse's vested interest in military retirement pay may not be unilaterally diminished by the military spouse's post-decree waiver of retirement pay in favor of disability benefits. *E.g., Surratt v. Surratt*, 85 Ark. App. 267, 148 S.W.3d 761, 767 (2004); *In re Marriage of Neilsen and Magrini*, 341 Ill. App.3d 863, 275 Ill.Dec. 369, 792 N.E.2d 844, 849 (2003); *Black*, 842 A.2d at 1286; *Hadrych*, 149 P.3d at 598; *Hodge v. Hodge*, 197 P.3d 511, 515–16 (Okla.Civ. App.2008); *Johnson*, 37 S.W.3d at 897–98.[8]

■ For the foregoing reasons, we hold that a military spouse may not, by a post-decree waiver of retirement pay in favor of disability benefits or CRSC, unilaterally and voluntarily reduce the benefits awarded the former spouse in a dissolution decree. The trial court properly ordered Husband to compensate Wife for the reduction in her share of retirement pay caused by his March 2008 election of CRSC, a reduction that became effective in July 2008.[9] We remand this case to the trial court for entry of an order that Husband compensate Wife, both prospectively and as to the existing arrearage, for the decrease in her share of retirement pay caused by his election of CRSC.[10]

### III. Contempt

■ Husband argues the trial court abused its discretion by finding him in contempt. The trial court's finding regarding whether a party is in contempt is a matter within the trial court's discretion and will be reversed only for an abuse of discretion. *Williamson v. Creamer*, 722 N.E.2d 863, 865 (Ind.Ct.App.2000). When reviewing a contempt order, we neither reweigh the evidence nor judge the credibility of witnesses, and we consider only the evidence and reasonable inferences supporting the trial court's judgment. *Id.*

■ "In order to be held in contempt for failing to comply with a court order, a party must have willfully disobeyed the order." *Deel v. Deel*, 909 N.E.2d 1028, 1032 (Ind.Ct.App.2009). "The order must have been so clear and certain that there could be no question as to what the party must do, or not do, and so there could be no question regarding whether the order is violated." *Id.* (quotation omitted). "A party may not be held in contempt for failing to comply with an ambig-

8. *But see Pierce*, 982 P.2d at 998; *Morgan v. Morgan*, 249 S.W.3d 226, 232–33 (Mo.Ct.App. 2008); *Youngbluth*, 2010 WL 2139256, at ¶ 17–20 (all reaching the contrary conclusion).

9. We make no statement about whether the Husband is able to continue to elect CRSC or otherwise receive his portion of the retirement as tax-free disability benefits. We hold only that Husband may not reduce Wife's portion of the retirement.

10. Because Husband is free to compensate Wife from any of his available assets, the trial court's order on remand need not and should not specify his CRSC benefit as the source of this compensation. *See Griffin*, 872 N.E.2d at 658 (finding error in trial court order that specified disability payments as source of funds to be paid to former spouse).

uous or indefinite order ... [o]therwise, a party could be held in contempt for obeying an ambiguous order in good faith." *Id.* (quotations omitted).

Here, the trial court's basis for finding Husband in contempt was his failure to pay Wife any part of his military retirement pay for February and March 2008, the time in between when Husband began receiving retirement pay and when DFAS began deducting amounts from Husband's retirement pay and issuing corresponding checks to Wife.[11] The unambiguous language of the parties' dissolution decree required Wife to receive her fifty percent share of Husband's military retirement, without any qualification or limitation to the period after DFAS began issuing Wife checks. Husband knew Wife was not receiving her share for February and March 2008 because the account statement issued to him by DFAS showed he was receiving the entire disposable amount. While Husband later disputed in good faith the precise amount owed to Wife, there was never a good faith dispute that Wife was owed something for February and March 2008. Husband does not challenge the correctness of the trial court's findings that neither he nor DFAS paid Wife anything for those months, and despite the significant time that elapsed between then and the trial court's contempt order, Husband never made any effort to pay Wife the amount due her. Therefore, Husband was in willful violation of a clear and certain requirement of the decree.

 Husband argues that at the hearing on the show cause petition, "Wife's counsel made a binding judicial admission

that Husband complied with his obligations under the Decree from February 2008 through July or August 2008." Brief of Appellant at 41. Wife's counsel stated the following in opening argument:

> The waiver was not in place when [Husband and Wife] mediated an Agreement, put it in writing and submitted it to the Court for approval. And as to when the agreement might take place, again it is, I mean as soon as the Court signs the Decree it's a Court Order. There shouldn't be any further instructions of okay you're under a Court Order and you need to be instructed as to when you are to abide by that Court Order. You are to abide by that Court Order the minute this Court signs the Decree and it becomes a Court Order. And [Husband] cannot say, well, I didn't know when it was supposed to be because from February 2008 until approximately July or August of 2008 he did abide by the Court Order. He knew exactly what he was supposed to be doing. It was then that he changed the way he would receive his disability pay and the way he would receive his pension.

Tr. at 15. Generally, counsel's opening statement is not evidence; rather, it acquaints the court with the facts counsel intends to prove. *Luphahla v. Marion County Sheriff's Dep't,* 868 N.E.2d 1155, 1158–59 (Ind.Ct.App.2007). However, a clear and unequivocal admission of fact, or a formal stipulation that concedes any element of a claim or defense, is a binding judicial admission. *Id.* at 1159. Husband relies upon this court's recent decision in *Heyser v. Noble Roman's, Inc.,* 933 N.E.2d

---

11. The trial court declined to find Husband in contempt for electing his CRSC benefit and causing Wife's payments from DFAS to be reduced, noting there was a legitimate question of law as to the extent of the payments he would continue to owe Wife in this circum-stance. While the trial court correctly concluded Wife's payments could not be reduced, Husband did not have the benefit of the trial court's or our analysis of the issue, and accordingly, Husband committed no willful violation of the decree in this regard.

16 (Ind.Ct.App.2010), where we clarified that "[a] statement which contains ambiguities or doubt is not to be regarded as a binding admission." *Id.* at 19. We concluded that where the plaintiffs' counsel "unequivocally stated" the plaintiffs were alleging actual fraud, not constructive fraud, that admission was binding throughout the lawsuit. *Id.* at 20. Here, by contrast, the above-quoted statement of Wife's counsel was not an unequivocal admission regarding the amount of payments Wife should have been receiving or whether Husband's failure to make any payments to Wife for February and March 2008 was a willful violation of the decree. Rather, in context, counsel's statement was part of an argument that Husband was aware of the decree and his waiver of retirement pay in favor of CRSC post-dated the decree. We conclude the trial court did not abuse its discretion by finding Husband in contempt.

## IV. Attorney Fees

Husband challenges the trial court's award of attorney fees to Wife and denial of his request for attorney fees. Pursuant to statute, a trial court "may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding" under the article governing dissolution of marriage, including attorney fees. Ind.Code § 31–15–10–1. The trial court's decision to grant or deny attorney fees under this statutory provision will not be disturbed absent an abuse of discretion. *Stratton v. Stratton,* 834 N.E.2d 1146, 1152 (Ind.Ct.App.2005). An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Daugherty v. Daugherty,* 816 N.E.2d 1180, 1187 (Ind.Ct. App.2004).

Husband does not dispute that the trial court's award of attorney fees to Wife is supported by its finding Husband in contempt. *See* Appellant's App. at 16 ("This Court, having found [Husband] in contempt for violation of the Decree, now awards attorney fees to [Wife]. . . ."). Because we have concluded the trial court did not abuse its discretion by finding Husband in contempt, we also conclude the trial court did not abuse its discretion in its award of attorney fees to Wife and denial of Husband's request for attorney fees.

### Conclusion

The trial court's judgment is affirmed insofar as it requires Husband to compensate Wife for the reduction in her share of retirement pay caused by his post-decree election of CRSC, but is reversed insofar as it divides those amounts of Husband's gross retirement pay that are required to be deducted as SBP costs or were, previous to the decree, waived to receive VA disability benefits. Because Husband does not challenge the trial court's order that he pay Wife her share of retirement pay, so calculated, for February and March 2008, and because the trial court did not abuse its discretion by finding Husband in contempt nor in its award of attorney fees to Wife, the judgment is affirmed in all other respects and this cause remanded for entry of an order consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

MAY, J., and VAIDIK, J., concur.