Circuit Court for Baltimore City
Case No. 24D02003910

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2328

September Term, 2014

_____


WALTER R. HURT

v.

VERDENA JONES-HURT

_____


Nazarian,
Leahy,
Friedman,

JJ.

_____

Opinion by Nazarian, J.

_____

Filed:  August 30, 2017

When Verdena Jones-Hurt ("Wife") and Walter Hurt ("Husband"), a veteran, divorced, the Circuit Court for Baltimore City included one-third of Husband's military pension in the marital property award it ordered in Wife's favor.  Years after the divorce, Husband was reevaluated for a military service disability benefit and his disability rating increased, which made him eligible for more disability benefits and allowed him to waive a portion of his pension (which is taxable and may be considered marital property) in favor of disability benefits (which are not taxable and may not, as a matter of federal law, be considered marital property).  The result was that the federal government paid Husband the same amount of money each month, but Husband retained a greater share of it than the circuit court had awarded him: Wife received one-third of a smaller pension benefit, and Husband kept two-thirds of the smaller pension and all of the disability benefits.

Wife sought a declaratory judgment seeking, in effect, a ruling that Husband's election had circumvented the divorce judgment and that awarded her the same amount she previously had been receiving.  Over the course of three different orders, the court ruled that Wife was entitled to the same overall dollar amount from Husband's total military benefits, notwithstanding the reduction in his pension payout.  That result was consistent with three reported decisions of this Court and the greater weight of cases across the country.  Husband challenges these decisions and argues, among other things, that our cases were wrongly decided.  We need not revisit our earlier decisions ourselves, though, because  the Supreme Court of the United States's opinion in *Howell v. Howell*, 137 S. Ct.

1400 (2017), issued after argument in this case, effectively overrules our precedents and compels us to reverse the judgment of the circuit court.

## I. BACKGROUND

Husband served in the Army National Guard of Maryland from July 3, 1969 to June 14, 1971 and from May 15, 1985 to October 1, 1987. He suffered three injuries during his time in the service—one during the first period and two during the second. After his first injury, Husband received a ten percent disability rating that entitled him to a Wartime Disability Compensation award pursuant to 38 U.S.C. § 1110. He retired from the Army National Guard in 1998 and later applied for retirement benefits, which would kick in after he turned sixty years old.

Husband and Wife married in 1972, and divorced on October 26, 2004, via a Judgment of Absolute Divorce issued by the circuit court. Among other things, the judgment awarded Wife alimony of $600 per month for three years and "one-third of the marital share of [Husband]'s pension from the United States Army, the marital share . . . to be calculated from June 3, 1972 to April 1, 2002." Everyone agrees that at the time that it entered the Judgment of Absolute Divorce, the court was not aware that Husband was receiving disability benefits.

On January 13, 2009, Husband "filed a claim for increased evaluation" of his disability with the Department of Veterans Affairs ("DVA"). While awaiting the DVA's decision, Husband turned sixty years old and began collecting his Army pension as a reservist. *See* 10 U.S.C. § 12731. Because a retiree may not receive both reservist

retirement and disability compensation, *see* 38 U.S.C. § 5305, Husband's receipt of disability benefits from the DVA automatically reduced his retirement pension from the Department of Defense on a dollar-for-dollar basis. On December 15, 2009, the DVA issued a Rating Decision that increased Husband's monthly disability entitlement and allowed him to receive thirty, rather than ten, percent of his total military benefits as disability benefits rather than pension:[1]

> Evaluation of right knee replacement, which is currently 10 percent disabling, is increased to 100 percent effective December 19, 2008. An evaluation of 30 percent is assigned from February 1, 2010[.]

On October 26, 2011, Wife reopened the case and filed a Complaint for Entry of Qualified Domestic Relations Orders. One of the two orders she sought pertained to Husband's military pension, and would have provided that "any portion of the Service Member's Disposable Retired Pay that he waives in order to receive military disability retired pay . . . in lieu of Disposable Retired Pay shall be added back in, and any deficiency resulting from any such waiver that affects the amount paid directly to [Wife] by the Designated Agent shall be paid to her directly by [Husband]."[2] Husband filed an answer stating that Wife's proposed orders were "seriously inconsistent with the October 26, 2004 order." After a hearing on February 27, 2012, the circuit court denied Wife's Motion for Entry of Qualified Domestic Relations Orders and entered an order to that effect.

---

[1] Husband has appealed his thirty percent disability rating, and his DVA appeal was still pending at the time of oral argument.

[2] The other order pertained to Husband's state pension.

On August 21, 2012, Wife filed a Motion for Declaratory Judgment and Ancillary Relief, requesting that the circuit court determine that she had a valid claim to Husband's pension arrears and that the court enter a Constituted Pension Order that included a provision that "[t]o the extent the Designated Agent is prohibited by law or regulation from paying the entire amount required by this order to [Wife], [Husband] shall personally pay any shortfall to [Wife]." Husband responded that "[t]he order violates federal law and deprives [Husband] of disability benefits for a disability which occurred before the marriage, worsened during the marriage. Such action by the state court is explicitly barred by federal law." The court held a hearing and determined that Wife was entitled to the same division of retirement benefits in the 2004 order:

> I agree with both of you. [Husband's counsel], yes, the court can't order retirement benefits and disability benefits for -- from your client's military award, but at the same time I agree with [Wife's counsel] in terms of the Allen case and the argument that every person in the military would then file then later disability and then try and cut the spouse off completely or to a certain percentage of the disability.
>
> I don't think that was the intent of the courts. I've looked at the -- and reviewed the judgment of divorce in 2004, and it looks like the court contemplated that [Wife] would receive one-third of all retirement benefits accrued between June 3rd, 1972 and April 2nd, 2002.
>
> To deny her benefits that were originally for -- I'm sorry, to deny her benefits that the court originally intended for her to share today would be contrary to the intent, I believe, of the court based on the court's determination after a hotly contested trial of the testimony and the exhibits.
>
> And of course I'm not going to demand that the military payments be paid directly to [Wife] because it would be in

4

violation of federal law, but in principle not of contract, but out of principle of the intent of the original court that issued the absolute divorce I think and I believe that -- and I'm not in [the 2004 judge]'s head, but I think he was trying to award her one-third of the spouse's, [Husband]'s military retirement.

In terms of some sort of provision, [Wife's counsel], that you're asking the court to put in here that would limit the amount or prevent her from -- that's something in the future, and because there's no number that we have definitive now I hesitate to do that, and of course I think if there is ever a 30 percent, they stay with 30 percent or go higher I'm sure -- and this court does have jurisdiction over the parties -- that you will come back to court and ask for some relief.

After two days of hearings on April 16 and 17, 2014, the circuit court entered a Constituted Pension Order that awarded Wife "26.57[3] percent of [Husband]'s disposable military retired pay [and] a pro rata share of any post-retirement increases and cost of living adjustments to [Husband]'s Disposable Retired Pay."

On November 14, 2014, Husband filed a Motion to Modify or Reconsider Ruling As to Military Disability Compensation or, in the Alternative, for Judgment in Favor of Defendant and Request for Hearing. Wife responded on December 1, 2014, and in an order filed December 9, 2014, the circuit court denied Husband's motion.[4]

---

[3] The provided copy of the written order in Husband's record extract had 26.57 typed on it and 23.97 handwritten above the typed number. The original order in the record, however, does not contain the handwritten number. The correct number is 26.57.

[4] Husband filed a notice of appeal on January 8, 2015, and the parties filed a Consent Motion to Remand or Appropriate Relief with this Court, which granted the motion, remanded the case, and stayed the appeal until now.

5

In March 2015, Husband filed a Motion to Amend Constituted Pension Order in which he requested that the court change the percent of the total pension to which Wife was entitled to 23.97% rather than 26.57%. The court denied Husband's motion, and on September 18, 2015, entered a *nunc pro tunc* order, that provided, among other things, "that the trial court intended through its Judgment of Absolute Divorce for [Wife] to receive one-third of [Husband]'s military pension benefits accrued between June 3, 1972 and April 1, 2002" and that the parties agreed that Wife's "marital share of [Husband]'s military pension is 26.6%." The court further recognized that directing the military to pay the full amount of the pension owed to Wife would contravene federal law and "[ordered] that [Husband] shall pay to [Wife] the differential between the amount [Wife] receives directly from the government once [Wife] begins to receive her portion of the pension through the Constituted Pension Order, and the full amount of the pension she is entitled to receive pursuant to the divorce judgment." On May 16, 2016, the parties filed a Proposed Supplemental Order, which the court entered on June 14, 2016, that ordered that Husband pay Wife "26.57% of [his] military disability payments by direct payment as a result of converting a portion of his military retired pay to disability pay."

The circuit court then entered a Declaratory Judgment, dated July 15, 2016, declaring that Wife was not entitled to any portion of Husband's disability benefits and that any portions of the Judgment for Absolute Divorce requiring division of Husband's disability benefits was unenforceable. The circuit court explained in its accompanying memorandum that it "lack[ed] authority to order division of [Husband]'s military disability

6

benefits, where, as here, [Husband] took no steps to dilute [Wife]'s ordered share of the benefits and the parties reached no agreement regarding division of such benefits." The court, however, "[declared] that to the extent funds are available for payment of benefits to [Wife] from [Husband]'s disposable retirement pay, [Wife] is entitled to receive the benefits, up to one-third of [Husband]'s benefits as required by the Judgment of Absolute Divorce." This timely appeal followed.[5]

## II. DISCUSSION

Husband challenges the portion of his military benefits that the circuit court required him to pay to Wife after his military disability benefits increased,[6] and that decision is grounded in legal conclusions that we review *de novo*. *Wilson v. Wilson*, 223 Md. App. 599, 609 (2015) (citation omitted). He offers three arguments in favor of reversal. *First*, he attempts to distinguish this case from three reported cases of this Court that address the division by agreement of a spouse's military retirement benefits. *Second*, whether or not this case is distinguishable, he argues, the earlier cases on which the circuit court relied were decided wrongly. *Third*, Husband argues that the circuit court considered improperly his future eligibility for military disability compensation when it considered and awarded alimony to Wife.

---

[5] *See* note 4.

[6] In his brief, Husband phrases the issue as: "Did the Circuit Court for Baltimore City err when it ordered, originally and on reconsideration, that Major Walter Hurt must pay to his ex-wife, Verdena Jones-Hurt, 1/3rd of the marital share of his military disability benefit?"

Although it might seem like a regular family law case, this appeal poses a thorny federalism question. Marriage, divorce, and the division of marital property are quintessentially matters of state law, and pension or retirement benefits normally are considered marital property at the time of divorce. But military benefits are creatures of federal law, and the treatment of military benefits in state divorce proceedings has been a source of federal and state tension for decades.

In 1981, the Supreme Court of the United States held that the federal statute governing military benefits preempted state family law and precluded those benefits from being treated as community property in state divorce proceedings. *McCarty v. McCarty*, 453 U.S. 210, 232–33 (1981). The Court of Appeals extended the *McCarty* principle to marital property in this equitable distribution state soon after. *Hill v. Hill*, 291 Md. 615, 620–21 (1981). In response to *McCarty*, Congress passed the Uniform Services Former Spouses Protection Act ("USFSPA"), codified in pertinent part at 10 U.S.C. § 1408. That statute authorized states to treat the net disposable pay of retired service members as divisible property. *Collins v. Collins*, 144 Md. App. 395, 421–22 (2002). The USFSPA defines "disposable retired pay" as "the total monthly retired pay to which a member is entitled" minus certain amounts. 10 U.S.C. § 1408(a)(4). "Among the amounts required to be deducted from total pay are any amounts waived in order to receive disability benefits." *Mansell v. Mansell*, 490 U.S. 581, 585 (1989) (citing 10 U.S.C. § 1408(a)(4)). "Thus, under the Act's plain and precise language, state courts have been granted the

authority to treat disposable retired pay as community property; they have not been granted the authority to treat total retired pay as community property." *Id.* at 589.

Faced with the *McCarty* issue under the then-new statute, the Supreme Court held in *Mansell* that "the [USFSPA] does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits." *Id.* at 594–95. And in the course of explaining the differences between the two forms of benefits, the Court recognized the tax advantages of waiving retirement pay in favor of disability benefits:

> Members of the Armed Forces who serve for a specified period, generally at least 20 years, may retire with retired pay. The amount of retirement pay a veteran is eligible to receive is calculated according to the number of years served and the rank achieved. . . . The amount of disability benefits a veteran is eligible to receive is calculated according to the seriousness of the disability and the degree to which the veteran's ability to earn a living has been impaired.
>
> In order to prevent double dipping, a military retiree may receive disability benefits only to the extent that he waives a corresponding amount of his military retirement pay. *Because disability benefits are exempt from federal, state, and local taxation, . . . military retirees who waive their retirement pay in favor of disability benefits increase their after-tax income. Not surprisingly, waivers of retirement pay are common.*

*Id.* at 583–84 (emphasis added) (internal citations and footnote omitted).

As to military pension benefits, though, the USFSPA "specifically overruled the Supreme Court with the intent to return to state law. 'Under Maryland law, . . . pensions generally, including military pensions, are marital property.'" *Collins*, 144 Md. App. at

9

422 (quoting *Andresen v. Andresen*, 317 Md. 380, 384 (1987)). "[A] military pension shall be considered in the same manner as any other pension or retirement benefit" when determining whether property is marital property. Md. Code (1984, 2012 Repl. Vol.), § 8-203(b) of the Family Law Article ("FL"); *see also Collins*, 144 Md. App. at 415 ("There is no question that a pension, or rights to a pension, are part of marital property." (citations omitted)). Thus, a court "may transfer ownership of an interest in a pension, retirement, profit sharing, or deferred compensation plan, from one party to either or both parties," FL § 8-205(a)(2)(i), "to the extent it was earned during the marriage," *Woodson v. Saldana*, 165 Md. App. 480, 488 (2005). "[T]he court has broad discretion in evaluating pensions and retirement benefits, and in determining the manner in which those benefits are to be distributed." *Id.* at 489 (quoting *Welsh v. Welsh*, 135 Md. App. 29, 54 (2000)).

The veteran spouse's ability to waive retirement pay in favor of disability benefits creates opportunities for disagreements and gaming, though, especially when the election comes after the property division is finalized. In earlier cases, we and other state courts reconciled this tension by treating the total military benefit as a whole. *See Allen v. Allen*, 178 Md. App. 145, 155 (2008) (stating that the term "pension/retirement plans" included "all retirement benefits accrued as a result of appellant's military service"); *see also Bandini v. Bandini*, 935 N.E.2d 253, 260–61 (Ind. Ct. App. 2010) (stating that the term "military retirement/pension plan" is broad and refers to the appellant's retirement benefits as one unit such that, in the absence of any limiting language, it "encompasse[d] [appellant]'s gross retirement pay, before any deductions for [his Survivor Benefit Plan]

10

costs or amounts waived to receive [DVA] disability benefits"); *Johnson v. Johnson*, 37 S.W.3d 892, 896–97 (Tenn. 2001) (stating that where the phrase "all military retirement benefits" was undefined, it unambiguously included "all amounts to which the retiree would ordinarily be entitled as a result of retirement from the military," including amounts waived to receive disability benefits). Although the portions of a veteran's gross retirement pay waived to receive disability benefits may not be included in a marital award, *Mansell*, 490 U.S. at 594–95, several states' courts have enforced agreements—in other words, kept the non-veteran spouse whole—where the veteran elected *after the decree* to waive all or some of a military retirement pension to receive disability benefits. *See, e.g.*, *Bandini*, 935 N.E.2d at 262, 266; *Allen*, 178 Md. App. at 155–56; *Dexter v. Dexter*, 105 Md. App. 678, 680 (1995); *Johnson*, 37 S.W.3d at 896–97. Although the veteran was entitled as a matter of federal law to make the election, divorce courts viewed the exercise of that right as altering the parties' bargain as a matter of state law, and took steps to maintain the balance that the parties intended.

Our Court confronted this tension in three reported cases over the years. In *Dexter*, the parties reached an agreement regarding the division of one spouse's military pension, and that agreement was read into the record and incorporated into their divorce judgment. *Dexter*, 105 Md. App. at 680. Shortly thereafter, the military spouse voluntarily waived his rights to military retirement benefits in favor of disability benefits, and the non-military spouse stopped receiving pension payments. *Id.* at 680. We concluded that "[t]he inability of [the non-military spouse] to receive the benefits she bargained for [wa]s caused not by

11

any federal statute or case law, but by [the military spouse]'s rejection, by waiver, of the retirement benefits that he had agreed were to be partially hers." *Id.* at 684. Relying on Maryland contract law, we held that the military spouse's voluntary waiver of his military retirement pension breached his contract:

> where . . . the parties enter into an agreement that one spouse will receive a percentage of pension benefits, on a periodic basis, when they become payable, and when . . . they are already payable and being paid, the pensioned party may not hinder the ability of the party's spouse to receive the payments she has bargained for, by voluntarily rejecting, waiving, or terminating the pension benefits.

*Id.* at 686.

We reached similar conclusions in *Allen* and *Wilson*. In *Allen*, we determined that a military spouse who had agreed to share a pension may not take steps to dilute the other spouse's share by rejecting, waiving, or terminating pension benefits voluntarily. 178 Md. App. at 155–56. Viewing the case through a contractual lens, we concluded that the non-military spouse would be entitled to the agreed percentage of the veteran's overall military benefit "because [the military spouse]'s disability retirement benefits are paid as pension and retirement benefits and take the place of other pension and retirement benefits, [and thus,] they are subject to the division of 'pension/retirement plans.'" *Id.* And we recognized that although federal law precludes state courts from treating disability retirement benefits as marital property, the veteran spouse could discharge his obligations without spending disability benefits to do it:

> [t]he circuit court's ruling on appeal does not require payment to [the spouse] of any disability benefits, thus, the court, in

> essence, is not treating as property divisible, payment that has been waived to receive disability benefits. When [the military spouse] was discharged from the military, he received in entirety the benefits the United States owed to him for his service. These assets have become part of [the retiree's] general assets. Accordingly, [the military spouse] can satisfy the judgment against him with any assets, thereby not violating *Mansell*. We, therefore, affirm the circuit court's determination of arrearages to be satisfied by [the military spouse] out of his general assets.

*Id.* at 153–54.

In *Wilson*, we held as well that where a party agrees to a transfer of assignable pension benefits as part of a divorce settlement, he may not frustrate that agreement by waiving those pension benefits. 223 Md. App. at 629. We noted that, as in *Allen*, 178 Md. App. at 146, the parties agreed that the spouse would receive a percentage of the marital portion of the military spouse's military retirement benefits and "that those benefits were not required to be paid by the military." 223 Md. App. at 626. After looking at *Allen* and *Dapp v. Dapp*, 211 Md. App. 323 (2013), we concluded that the military spouse's "anticipated military benefits were divisible and assignable at the time of contract," that "the parties' property settlement agreement was valid at the time it was executed, and the trial court had the authority to enforce the parties' agreement." *Wilson*, 223 Md. App. at 629 (citations omitted).

Our cases are consistent with the majority view in other states' courts, *i.e.*, that *Mansell* and the USFSPA did not preclude courts from requiring a military spouse to compensate a spouse when the spouse's share of retirement pay was reduced by the military spouse's unilateral waiver of retirement pay in favor of disability benefits. As in our cases,

13

these courts proceeded from the principle that it is inequitable to allow a veteran to diminish voluntarily the military retirement benefits owed to a spouse as part of a valid and enforceable divorce judgment. *E.g.*, *In re Marriage of Krempin*, 83 Cal. Rptr. 2d 134, 143 (Cal. Ct. App. 1999); *In re Marriage of Warkocz*, 141 P.3d 926, 929–30 (Colo. Ct. App. 2006); *Black v. Black*, 842 A.2d 1280, 1285 (Me. 2004); *Shelton v. Shelton*, 78 P.3d 507, 509–10 (Nev. 2003); *Whitfield v. Whitfield*, 862 A.2d 1187, 1192 (N.J. Super. Ct. App. Div. 2004); *Hadrych v. Hadrych*, 149 P.3d 593, 597 (N.M. Ct. App. 2006); *Resare v. Resare*, 908 A.2d 1006, 1009–10 (R.I. 2006).[7] Some courts distinguished pre-divorce and post-divorce waivers on the ground that *Mansell*'s holding, *i.e.*, that state courts may not "treat as property divisible upon divorce military retirement pay that *has been waived* to receive veterans' disability benefits," 490 U.S. at 594–95 (emphasis added), extended only to waivers known at the time of the divorce. *See, e.g.*, *Krempin*, 83 Cal. Rptr. 2d at 139. Some focused more on the non-military spouse's vested interest in the military retirement pay, and precluded the military spouse from waiving retirement pay in favor of disability benefits after the divorce judgment. *E.g.*, *Surratt v. Surratt*, 148 S.W.3d 761, 767 (Ark. Ct. App. 2004); *In re Marriage of Neilsen & Magrini*, 792 N.E.2d 844, 849 (Ill. App. Ct. 2003); *Black*, 842 A.2d at 1286; *Hadrych*, 149 P.3d at 598; *Hodge v. Hodge*, 197 P.3d 511,

---

[7] Some state courts reached a contrary conclusion. *See, e.g.*, *In re Marriage of Pierce*, 982 P.2d 995, 998 (Kan. Ct. App. 1999); *Youngbluth v. Youngbluth*, 6 A.3d 677, 684–85 (Vt. 2010).

515–16 (Okla. Civ. App. 2008); *Johnson*, 37 S.W.3d at 897–98.[8]  Either way, these courts, like the circuit court in this case, recognized the federal law that creates the veteran's right to different types of benefits, but sought, in the context of state law divorce proceedings, to blunt the opportunity for veterans to game their divorce judgments through after-the-fact elections.

But a new Supreme Court decision, issued since oral argument in this case, diminishes state courts' efforts to carry out state law objectives in this quintessentially state law space.  In *Howell v. Howell*, the Supreme Court held that state law purporting to recognize a vested interest in military retirement pay is preempted by federal law, period. 137 S. Ct. 1400, 1405–06 (2017) (citing *Mansell*, 490 U.S. at 594-95).  Put another way, the veteran's ability under federal law to waive retirement pay for disability benefits, at whatever time his disability status might change, overrides (preempts!) any state law agreement he might have made, or state court judgment to which he was a party, relating to his military retirement benefits, and the parties and state court should have factored this possibility when valuing the parties' marital property:

> Hence here, as the Solicitor General emphasizes, the nonmilitary spouse and the family court were likely to have assumed that a full share of the veteran's retirement pay would remain available after the assets were distributed.
>
> Nonetheless, the temporal difference highlights only that [the veteran's] military retirement pay at the time it came to [the spouse] was subject to later reduction (should [the

---

[8] *But see Pierce*, 982 P.2d at 998, *Morgan v. Morgan*, 249 S.W.3d 226, 232–33 (Mo. Ct. App. 2008), and *Youngbluth*, 6 A.3d at 685–87, for instances where state courts reached the contrary conclusion.

veteran] exercise a waiver to receive disability benefits to which he is entitled). The state court did not extinguish (and most likely would not have had the legal power to extinguish) that future contingency. The existence of that contingency meant that the value of [the spouse's] share of military retirement pay was possibly worth less—perhaps less than [the spouse] and others thought—at the time of divorce. So too is an ownership interest in property (say A's property interest in Blackacre) worth less if it is subject to defeasance or termination upon the occurrence of a later event (say, B's death).

137 S. Ct. at 1405.

Before *Howell*, our decisions in *Allen*, *Dexter*, and *Wilson* supported the circuit court's decision here. And as a matter of real-world logic, those decisions made sense. In a divorce like this, where the military spouse's pension comprises a meaningful proportion of the couple's marital property, the court presiding over the divorce has to value the assets based on the information available at the time of trial.[9] When Husband and Wife divorced, the trial court didn't know that Husband was receiving disability benefits, and the record before us reveals no inkling that his disability status might increase over time. Even if the parties had had such an inkling, there would have been no way to know whether the military would have granted a change in status, how much of a change it might grant, or when. *Allen*, *Dexter*, and *Wilson* respected the federal law defining military retirement and disability benefits, but viewed the federal law as defining the property that the divorce court

---

[9] The potential gamesmanship and inequity are even stronger where the spouses agree on a property division, the premises of which are no longer sound. And although it is not our place to offer practice tips to the family law bar, it would seem that agreeing to a percentage of military retirement pay as part of a divorce settlement is now a much riskier gamble.

16

was to value and divide, and allowed our courts to adapt the implementation of their marital property awards to the fluid real-life circumstances of the parties.

*Howell* effectively overrules these cases. And as a result, Husband's ability to elect disability benefits over retirement pay overrides our courts' ability to amend the marital property award to reflect post-judgment changes in circumstances. Although the circuit court could not have known this at the time, we now know that military retirement benefits are *always* contingent, whether or not the veteran has a disability rating at the time of divorce. The possibility of a new disability rating is *always* out there, and parties and courts must account for (and attempt to predict the likelihood of) these contingencies when valuing military retirement pay. To be sure, the Supreme Court recognized that its holding might work as a hardship on divorcing spouses, and "note[d] that a family court, when it first determines the value of a family's assets, remains free to take account of the contingency that some military retirement pay might be waived, or . . . take account of reductions in value when it calculates or recalculates the need for spousal support." *Id.* at 1406. But of course, that doesn't help Wife in this case, whose "one-third of the marital share of [Husband]'s pension from the United States Army, the marital share . . . to be calculated from June 3, 1972 to April 1, 2002" was grounded on a then-valid valuation of Husband's benefit stream, but now finds herself entitled to a one-third share of a smaller pie.

17

Without *Howell*, our precedents would have supported a decision to affirm the judgment of the circuit court. *Howell* changed the superseding federal law on the question before us in this case, and compels us to reverse the circuit court.

Even so, the preemptive scope of *Howell* governs only the treatment of this particular asset in the analysis of marital property awards, and doesn't seem to preclude a court from considering the contingent or diminished value of a military pension in connection with other relevant decisions in divorce cases. When Congress preempts state law, it does so "'against the background of the total *corpus juris* of the states.'" *Wallis v. Pan Am. Petro. Corp.*, 384 U.S. 63, 68 (1966) (citation omitted). "[T]his is especially true where a statute deals with a familial relationship; there is no federal law of domestic relations, which is primarily a matter of state concern." *De Sylva v. Ballentine*, 351 U.S. 570, 580 (1956); *see also U.S. v. Yazell*, 382 U.S. 341, 351 (1966) (explaining that the Supreme Court's theory and precedent "teach us solicitude for state interests, particularly in the field of family and family-property arrangements"); *Ex parte Burrus*, 136 U.S. 586, 593-94 (1890) ("The whole subject of the domestic relations of husband and wife . . . belongs to the laws of the states, and not to the laws of the United States."). As part of our federalist bargain, Congress may preempt state law "where clear and substantial interests of the National Government, which *cannot* be served consistently with respect for such state interests, will suffer major damage if the state law is applied." *Yazell*, 382 U.S. at 351 (emphasis added). "On the rare occasion when state family law has come into conflict with a federal statute," the Supreme Court's review under the Supremacy Clause is limited to

18

"determin[ing] whether Congress 'has positively required by direct enactment' that state law be pre-empted.'" *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581 (1979) (quoting *Wetmore v. Markoe*, 196 U.S. 68, 77 (1904)). We presume, therefore, that Congress—and by extension, the Supreme Court—preempts no more broadly than necessary, and only to the extent it has said so. *Cf. Wissner v. Wissner*, 338 U.S. 655, 658 (1950) (Congress must preempt state authority with "force and clarity.").

*Howell* dealt solely with the distribution of federal military benefits, and that is as far as we think it reaches. The Supreme Court itself has long recognized that issues of family law are "'utterly incapable of being reduced to any pecuniary standard of value, as [they] rise[] superior to money considerations.'" *Ex parte Burrus*, 136 U.S. at 595 (citing *Barry v. Mercein*, 46 U.S. 103 (1845)). The distribution of the marital property, even the marital property of military couples, encompasses more than the proper valuation and treatment of federal benefits—it involves the consideration of equities that transcend accounting and money, a balancing analysis distinctly and historically a matter of state law. *See Alston v. Alston*, 331 Md. 496, 509 (1993); *see also Ex parte Burrus*, 136 U.S. at 597 ("[A] federal court cannot decide a family law case."). All the more so in Maryland, an *equitable* property state. *See Alston*, 331 Md. at 508-09 ("The Maryland Legislature specifically rejected the notion that marital property should be divided equally" (footnote omitted)).

*Howell* now has redefined (or maybe re-redefined) the federal retirement and disability benefits that may be considered "marital property." But a Maryland trial court's

equitable division of marital property only truly begins "once property [i]s determined to be 'marital'" in the first place. *See id.* at 508. In other words, the Supreme Court may have shrunk the size of a slice (*i.e.*, military pension benefits) in the marital award pie, but it is still up to our trial courts to determine the size of the pie under state law, then divide it equitably under the totality of the circumstances, and, alongside that process, to make other decisions about the parties' post-marital financial future. To posit one other example, the impact of *Howell* may in a particular case constitute a change in circumstances entitling a court to revisit an alimony award, which is "always subject to reconsideration and modification in the light of changed circumstances," *Heinmuller v. Heinmuller*, 257 Md. 672, 676-77 (1970), whether or not the parties or the court were aware *ex ante* that a spouse could elect to waive pension payments for disability benefits. We don't have any of these questions before us in this case, and *Howell* leaves them to be decided by trial courts—our State's trial courts—in the first instance.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. APPELLEE TO PAY COSTS.**