THOMPSON, Presiding Judge.
Michael L. Brown ("the husband") appeals from a judgment of the Madison Circuit Court ("the trial court") ordering him to begin paying Sinead M. Brown ("the wife") 25% of his monthly military-retirement benefits. The trial court also ordered the husband to pay the wife $30,084 for her share of his military-retirement benefits that had accrued but had not yet been paid.
The record indicates the following relevant facts. On August 23, 2010, the trial court entered a judgment divorcing the parties. The divorce judgment incorporated an agreement that the parties had reached, which included the following provision.
"6. DIVISION OF MILITARY RETIREMENT (SURVIVOR BENEFIT PLAN).
"The parties agree that the Wife shall be and she is hereby awarded, as a property settlement, an amount equal to TWENTY FIVE PER CENT (25%) of the Husband's disposable retirement benefits from the United States Army, which sum shall constitute a property settlement to the Wife and shall not be modifiable in the future. The Wife shall receive 25% of the Husband's disposable retirement benefits without regard to any reductions or setoffs due to disability compensation or any other reason except the premium for the Survivor Benefit Plan. If the Husband shall do anything-actively or passively-to reduce the share of the amount of the Wife, then he shall indemnify and reimburse her for any such loss, including associated costs, expenses, and attorney fees. The wife shall be entitled to receive an amount equal to 25% of the monthly, and/or lump sum retirement benefits to be paid to the Husband by virtue of his active duty with and retirement from the United States Army, which shall be payable to the Wife directly from the United States Army. Said payments to the Wife shall begin within thirty (30) days of the Husband's retirement, and shall continue payable to the Wife until the death of the Husband, at which time the Survivor Benefit Plan Election shall be effective in favor of the Wife, as hereinafter provided. The Husband voluntarily agrees that he shall be and he hereby is divested of the 25% interest in said retirement benefits, which said 25% interest shall be and the same hereby vested in the Wife as a property settlement.
"....
"The Parties agree that the Wife qualifies for an award of said interest in accordance with the Uniformed Services Former Spouses' Protection Act, 10 U.S.C.A. § 1408 (West Supp. 1993). Her eligibility for direct payment of a portion of the Husband's disposable retired pay pursuant to a property division is based upon her marriage to the Husband for more than ten (10) years or more, during which the Husband performed ten (10) years or more creditable service. 32 C.F.R. § 63.6(a)(2)(1992). The Court, having jurisdiction over the Husband (other than because of military assignment in the territorial jurisdiction of the Court) by reason of his residence in Madison County, Alabama; further finds that the treatment of retired pay as *854 property is in accordance with the laws of the State of Alabama.
"The parties acknowledge that the agreement of the Husband to divide his military retirement with the Wife and to make the election to participate in the Survivor Benefit Plan is being made pursuant to a voluntary written agreement, as a part of or incident to a proceeding of divorce, namely Sinead M. Brown vs. Michael L. Brown, Case Number DR-09-1610 in the Circuit Court of Madison County, Alabama; and further acknowledge that said agreement will be incorporated into, ratified, and approved by the Court in the [Judgment] of Divorce to be entered in said case."
In 2006, before the divorce proceedings commenced, the husband was diagnosed with a brain tumor, which left him blind in his left eye. The husband remained on active duty with the United States Army. After the parties divorced, the husband was diagnosed with post-traumatic stress disorder and major depression disorder. On September 27, 2015, the Army convened an informal physical evaluation board ("the PEB"), which found that the husband was physically unfit to remain on active duty. The PEB recommended that the husband receive a disability rating of 70% and that he be placed on the temporary disability retired list ("the TDRL"). On January 18, 2016, the husband, having reached the rank of colonel and with 31 years of service, was separated from service and placed on the TDRL.
The United States Department of Veterans Affairs ("the VA") found the husband to be 100% disabled. In a letter to the husband dated March 17, 2016, the VA notified him that he would receive monthly VA benefits of $3,394.06 effective March 2016. The wife has not sought any portion of the husband's VA benefits in this action. The husband's retiree account statement from the Defense Finance and Accounting Service ("DFAS") indicated that he received gross retirement pay of $7,521 each month. Pursuant to the terms of the 2010 divorce judgment, the wife applied to DFAS for payment of a portion of the husband's retirement pay pursuant to the Uniformed Services Former Spouses' Protection Act ("the USFSPA"), 10 U.S.C. § 1408. On February 11, 2016, she received a response from DFAS notifying her that the entire amount of the husband's retirement pay was based on disability and, therefore, there was no money available for payment to her under the USFSPA.
The wife filed in the trial court a petition for a rule nisi on June 24, 2016. In her petition, the wife alleged that, since the entry of the divorce judgment in 2010, the husband had elected to receive disability pay only and that he had eliminated the receipt of any retirement benefits to which she would have been entitled pursuant to the parties' agreement. She added that DFAS had notified her that her application for a portion of the husband's retirement pay had been denied. The wife maintained that, pursuant to the divorce judgment, she was entitled to receive 25% of the husband's disposable retirement benefits "without regard to any reductions or setoffs due to disability compensation or any other reason except the premium for the Survivor Benefit Plan."
On May 22, 2017, after the hearing on the wife's petition, the trial court entered a judgment in which it found, among other things not relevant to this appeal, that the wife was entitled to 25% of the husband's total gross pay of $7,521 each month, i.e., the amount of the husband's gross monthly pay from DFAS, excluding the amount he received from the VA each month. The trial court calculated that the wife's share of the husband's monthly pay was *855 $1,880.25. The trial court stated that the amount could be paid to the wife directly by the husband or "by voluntary allotment." The trial court also ordered the husband to pay the wife $30,084 for the portion of his military-retirement benefits the wife was owed from February 2016 until the date of the judgment. On June 15, 2017, the husband filed a timely motion to alter, amend, or vacate the judgment, which the trial court denied on June 20, 2017. The husband timely appealed from the judgment.
The husband contends that the trial court's judgment awarding the wife 25% of his monthly gross pay from DFAS and ordering him to reimburse the wife $30,084 violates federal law. Some background on the TDRL is helpful in disposing of this matter. A military member's placement on the TDRL is authorized by 10 U.S.C. § 1201, if it is determined that the military member might be permanently disabled and would be qualified for permanent retirement as a result of a disability. Swindle v. Swindle, 204 So.3d 430, 432 (Ala. Civ. App. 2016). This form of military retirement is commonly referred to as "Chapter 61" disability retirement. See Selitsch v. Selitsch, 492 S.W.3d 677, 684 (Tenn. Ct. App. 2015).
"[B]eing placed on the TDRL is materially different from a military spouse voluntarily choosing, after having agreed to divide all retirement benefits, to waive a portion of those benefits in order to receive VA disability benefits instead. Under TDRL statutes, a service member is 'placed on' the TDRL and is then subject to regular medical evaluations to determine whether TDRL status is still appropriate. See 10 U.S.C. §§ 1202, 1210. The service member does not voluntarily choose TDRL status. Additionally, TDRL benefits are addressed under a different section of the USFSPA than VA disability benefit waivers. See 10 U.S.C. § 1408(a)(4)(B) (addressing VA disability benefit waivers), (C) (addressing other disability retirement pay, including pay for service members on the TDRL)."
In re Marriage of Poland, 264 P.3d 647, 650 (Colo. App. 2011).
At the time the husband was placed on the TDRL, military members who were placed on the TDRL could remain on the list for up to five years.[1] After five years on the TDRL, the member must then be either returned to active duty, if fit for service; permanently retired for longevity, if at least 20 years of service has been attained; or permanently retired for disability, if he or she is at least 30% disabled and the disability is permanent and stable. 10 U.S.C. § 1210(b) - (f) ; see also, e.g., Miller v. United States, 120 Fed.Cl. 772, 786 (2015) ; Thomas v. Piorkowski, 286 S.W.3d 662, 666-67 (Tex. App. 2009). While on the TDRL, military members must be medically evaluated every 18 months. 10 U.S.C. § 1210(a).
Turning now to the husband's argument, the USFSPA allows state courts to treat a military member's "disposable retired pay" as marital property subject to division in a divorce proceeding. 10 U.S.C. § 1408(c)(1). However, the USFSPA excludes Chapter 61 benefits from the definition of "disposable retired pay." Specifically, the USFSPA provides:
"The term 'disposable retired pay' means the total monthly retired pay to which a member is entitled less amounts which- *856 "(iii) in the case of a member entitled to retired pay under chapter 61 of this title, are equal to the amount of retired pay of the member under that chapter computed using the percentage of the member's disability on the date when the member was retired (or the date on which the member's name was placed on the temporary disability retired list)."
10 U.S.C. § 1408(a)(4)(A)(iii) (emphasis added).
In Swindle, supra, this court explained that, for military members who are retired pursuant to Chapter 61,
"the monthly retirement pay is computed by using either the number of years of the member's service or the percentage of the member's disability. 10 U.S.C. § 1401. Section 1408(a)(4)(C), however, excludes only the amount 'computed using the percentage of the member's disability' from the amount of military-retirement pay considered 'disposable.' "
204 So.3d at 435 (emphasis added). This court, in Swindle, affirmed the trial court's judgment awarding the former wife 50% of the former husband's TDRL pay and sanctioning him for failure to pay the former wife her share of that pay. In doing so, we explained that the trial court had found that the former husband's pay while he was on the TDRL was computed using the number of years of his service and not by using the percentage of his disability, and the former husband had not challenged that finding. Therefore, we held, the TDRL pay was considered "disposable" income and not disability income. Therefore, that pay was subject to division. Swindle, 204 So.3d at 435.
Additionally, in In re Marriage of Poland, the Colorado Court of Appeals held that,
"based on 10 U.S.C. § 1408(a)(4)(C), ... an amount equal to the amount of TDRL pay, as calculated based on [the former] husband's percentage of disability when he was placed on the TDRL, must be excluded from the marital property, but ... any amounts in excess of that amount may be divided under the decree. See In re Marriage of Wherrell, 274 Kan. 984, 58 P.3d 734, 740-41 (2002) (recognizing that for service members who are eligible for retirement, disability retirement benefits may include both disability and retirement benefits, and only the disability portion is excluded from the marital property division); see also [ In re Marriage of] Williamson, 205 P.3d [538] at 542 [ (Colo. App. 2009) ] (same); In re Marriage of Strunck, 212 Ill. App. 3d 76, 155 Ill.Dec. 781, 570 N.E.2d 1, 2 (1991) (any amount of military disability retirement pay that is paid in excess of the amount related to the retired person's percentage of disability is part of disposable retired pay and is subject to division as marital property)."
264 P.3d at 649-50.
In this case, documentary evidence indicated that DFAS considered the entire amount of the husband's TDRL pay as disability pay. Therefore, in accordance with the authority set forth above, we agree with the husband that the evidence presented in this case indicates that his TDRL pay was disability pay that, under federal law, is not to be considered marital property subject to division. Our inquiry does not end there, however. We must consider the effect of the settlement agreement into which the parties entered, which was expressly incorporated into the 2010 divorce judgment.
The husband argues that the trial court impermissibly modified the parties' settlement agreement when it ordered him to pay the wife $1,880.25 a month. That amount represents 25% of his gross monthly pay from DFAS-the same percentage *857 as the husband agreed to pay the wife from his "disposable retirement benefits." The husband also contends that the trial court erred in requiring him to pay $30,084 for what the trial court said was the wife's share of the husband's TDRL benefits that had accrued but had not been paid. Specifically, the husband argues in his appellate brief that his TDRL pay, which he receives from DFAS, does not fall within the definition of "disposable retirement benefits." Therefore, he says, the wife was not entitled to receive any of his TDRL pay as part of the property settlement to which the parties had agreed.
On the other hand, the wife contends that the trial court did not err in awarding her a portion of the husband's monthly TDRL pay or the amount that she said had accrued to her but had not been paid. She maintains that the language contained in the settlement agreement that appears after the phrase "disposable retirement benefits," that is, "without regard to any reductions or setoffs due to disability compensation or any other reason except the premium for the Survivor Benefit Plan," entitled her to a share of the husband's TDRL benefits.
Until recently, there was authority to support the wife's position. After the United States Supreme Court decided Mansell v. Mansell, 490 U.S. 581, 594-95, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989), holding that "the [USFSPA] does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits," state courts were nonetheless willing to enforce settlement agreements in cases in which, after the entry of a divorce judgment, the military member elected to waive all or some of his or her military-retirement pension to receive disability benefits. Hurt v. Jones-Hurt, 233 Md. App. 610, 622, 168 A.3d 992, 999 (2017). The state courts' reasoning was to allow the military member's spouse to obtain the benefit of the agreement. See, e.g., Bandini v. Bandini, 935 N.E.2d 253, 262, 266 (Ind. Ct. App. 2010) ; Allen v. Allen, 178 Md. App. 145, 155, 941 A.2d 510, 516 (2008) ; Johnson v. Johnson, 37 S.W.3d 892, 896-97 (Tenn. 2001) ; and Abernethy v. Fishkin, 699 So.2d 235, 240 (Fla. 1997).
In 2017, however, the United States Supreme Court again visited the issue of whether the spouse of a military member was entitled to receive a share of that military member's "waived" retirement pay, that is, pay that could have been treated as retirement pay but which was instead essentially converted to disability pay. In Howell v. Howell, 581 U.S. ----, 137 S.Ct. 1400, 1405, 197 L.Ed.2d 781 (2017), the United States Supreme Court reiterated its holding in Mansell, supra, saying in that case: "[T]he Court held that federal law completely pre-empts the States from treating waived military retirement pay as divisible community property." The Howell Court recognized that some state courts were enforcing agreements and divorce judgments entered before a military member chose to waive retirement pay to receive disability pay, thus decreasing the pool of "disposable retirement benefits" in which the military member's spouse could share. Howell, 581 U.S. at ----, 137 S.Ct. at 1404-05. The Howell Court determined that those state courts were acting in error, and it held that, once a military member opts to waive retirement pay for disability pay, a state court cannot subsequently increase the spouse's share of the military member's retirement benefits, pro rata, or otherwise indemnify the spouse for the shortfall that occurs when disability pay reduces the amount of retirement pay from which the spouse is to receive a share. 581 U.S. at ----, 137 S.Ct. at 1402, 1405-06.
*858 The Howell Court noted that a military member's retirement pay is subject to a later reduction if that member chooses to exercise a waiver to receive disability benefits to which he or she is entitled. "The state court did not extinguish (and most likely would not have had the legal power to extinguish) that future contingency. The existence of that contingency meant that the value of [the spouse's] share of military-retirement pay was possibly worth less-perhaps less than [the spouse] and others thought-at the time of the divorce." 581 U.S. at ----, 137 S.Ct. at 1405. "Accordingly," the Howell Court explained, "while the divorce decree might be said to 'vest' [a spouse] with an immediate right to half of [the military member's] military retirement pay, that interest is, at most, contingent, depending for its amount on a subsequent condition: [the military member's] possible waiver of that pay." 581 U.S. at ----, 137 S.Ct. at 1405-06.
The Supreme Court then wrote:
"The principal reason the state courts have given for ordering reimbursement or indemnification is that they wish to restore the amount previously awarded as community property, i.e., to restore that portion of retirement pay lost due to the postdivorce waiver.... Regardless of their form, such reimbursement and indemnification orders displace the federal rule and stand as an obstacle to the accomplishment and execution of the purposes and objectives of Congress. All such orders are thus pre-empted."
581 U.S. at ----, 137 S.Ct. at 1406 (emphasis added).
In this case we have established that, under federal law, the husband's TDRL pay is disability pay that is not subject to division. We can draw no meaningful distinction between the circumstances in Howell, in which the military member waived retirement benefits to receive disability benefits from the VA, and the circumstances in this case, in which the husband received disability benefits when the Army placed him on the TDRL. Therefore, based on the holding in Howell, we are compelled to hold that the wife is not entitled to receive a portion of the husband's TDRL pay, and, therefore, the trial court erred in ordering the husband to pay her $1,880.25 each month as her 25% share of that TDRL pay. Additionally, because the wife was not entitled to any portion of the husband's TDRL pay, no amount of unpaid benefits had accrued, and the trial court erred in ordering the husband to pay the wife $30,084.
Finally, the husband contends that the trial court improperly ordered him to "reimburse" the wife for an attorney fee of $6,064.08. In its judgment, the trial court did not state the reason for its award of an attorney fee to the wife. At trial, the wife's attorney submitted a fee sheet indicating total fees of $6,064.48. The husband's attorney did not object to the submission of the time sheet and stipulated that the wife's attorney's time and hourly rate were fair. We note that issues other than those addressed on appeal were before the trial court. In its judgment, the trial court noted that those other issues "were resolved to the parties' mutual satisfaction."
"[A]s we explained in Glover v. Glover, 678 So.2d 174, 176 (Ala. Civ. App. 1996), " '[w]hether to award an attorney fee in a domestic relations case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed. Thompson v. Thompson, 650 So.2d 928 (Ala. Civ. App. 1994). "Factors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties' conduct, the results of the litigation, and, *859 where appropriate, the trial court's knowledge and experience as to the value of the services performed by the attorney." Figures v. Figures, 624 So.2d 188, 191 (Ala. Civ. App. 1993). Additionally, a trial court is presumed to have knowledge from which it may set a reasonable attorney fee even when there is no evidence as to the reasonableness of the attorney fee. Taylor v. Taylor, 486 So.2d 1294 (Ala. Civ. App. 1986).'
"The circuit court had the discretion to decide whether to require the husband to pay the wife's attorney fees. We will not reverse the circuit court's discretionary decisions unless we are convinced that it ' " 'committed a clear or palpable error, without the correction of which manifest injustice will be done.' " ' D.B. v. J.E.H., 984 So.2d 459, 462 (Ala. Civ. App. 2007) (quoting Clayton v. State, 244 Ala. 10, 12, 13 So.2d 420, 422 (1942), quoting in turn 16 C.J. 453)."
Damrich v. Damrich, 178 So.3d 872, 882 (Ala. Civ. App. 2014) ; see also Henderson v. Henderson, 227 So.3d 62, 71-72 (Ala. Civ. App. 2017) (same).
Based on the record before us and the arguments of the parties regarding this issue, we cannot say that the trial court's decision ordering the husband to pay the wife's attorney fee was palpable error or was manifestly unjust. Accordingly, we will not reverse the trial court's judgment as to this issue.
For the reasons set forth above, those portions of the judgment finding that the wife is entitled to receive $1,880.25 each month from the husband as her 25% share of his TDRL pay and ordering the husband to pay the wife $30,084 are reversed. The cause is remanded to the trial court for the entry of a judgment consistent with this opinion. The trial court's award of an attorney fee to the wife is affirmed.
The wife's request for an attorney fee on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Pittman, Thomas, Moore, and Donaldson, JJ., concur.
Thompson, P.J., concurs specially.
THOMPSON, Presiding Judge, concurring specially.
"[T]he United States Supreme Court is the final arbiter of federal law." Ex parte James, 836 So.2d 813, 834 (Ala. 2002) (Houston, J., concurring specially)(citing New York v. Ferber, 458 U.S. 747, 767, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) (stating that "this Court is the final arbiter of whether the Federal Constitution necessitated the invalidation of a state law") ). Therefore, based on the United States Supreme Court's holding in Howell v. Howell, 581 U.S. ----, 137 S.Ct. 1400, 197 L.Ed.2d 781 (2017), discussed in the main opinion, this court has no choice but to reverse the trial court's judgment awarding Sinead M. Brown ("the wife") 25% of the monthly military-retirement benefits Michael L. Brown ("the husband") is receiving by virtue of being placed on the temporary disability retired list ("the TDRL").
I understand and fully support Congress's desire to ensure that disabled military members receive sufficient benefits to compensate them for their disabilities. However, when a military member chooses to waive retirement benefits to receive disability benefits instead, the law as it now stands is detrimental to the financial stability of disabled military members' former spouses-some of whom were married to the military members throughout the members' entire careers. Because such a waiver works to the benefit of the military member-military-retirement benefits are *860 taxable and military-disability benefits are not taxable-many veterans understandably opt to take the waiver. See Mansell v. Mansell, 490 U.S. 581, 583, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989). A waiver affects the amount of the military member's retirement pay that the former spouse receives as part of a property settlement. The possibility of a waiver may not exist at the time the property settlement is reached or the divorce judgment is entered. The option to choose the waiver because of a disability may not arise until years after the military member has retired from serving in the Armed Forces and the former spouse has been receiving a portion of the veteran's military-retirement pay as the parties had agreed or as awarded in a divorce judgment. Even if the military member is aware of a disability at the time of the divorce, his or her disability status may change over time.
In determining whether property settlements or divorce judgments involving military-retirement pay are equitable, this court has often referred to the fact that
"the United States Senate Committee that initially considered the federal Uniformed Services Former Spouses' Protection Act, 10 U.S.C.A. § 1408 et seq.,... pointed out, 'frequent change-of-station moves and the special pressures placed on the military spouse as a homemaker make it extremely difficult to pursue a career affording economic security, job skills and pension protection.' Senate Report No. 97-502 (1982), reprinted in 1982 U.S.C.C.A.N. 1596, 1601; see also Mansell v. Mansell, 490 U.S. 581, 594, 109 S.Ct. 2023, 104 L.Ed. 2d 675 (1989)."
Stone v. Stone, 26 So.3d 1232, 1236 n.1 (Ala. Civ. App. 2009) (emphasis added).
Despite the recognition that, because of the nature of military service, military spouses are often unable to secure retirement plans or pensions of their own, Congress and the United States Supreme Court have in fact added to the financial instability of former military spouses in retirement. The Uniformed Services Former Spouses' Protection Act ("the USFSPA"), 10 U.S.C. § 1408 et seq., has created a set of circumstances in which former spouses will never obtain financial security in their own retirements if, in their financial planning, they rely on settlement agreements or judgments awarding them their equitable shares of military members' retirement benefits.
I agree with the Court of Special Appeals of Maryland's eloquent opinion in Hurt v. Jones-Hurt, 233 Md. App. 610, 168 A.3d 992 (2017), published after the United States Supreme Court's decision in Howell, supra, in which it discussed the current state of the law:
"Our cases are consistent with the majority view in other states' courts, i.e., that Mansell and the USFSPA did not preclude courts from requiring a military spouse to compensate a spouse when the spouse's share of retirement pay was reduced by the military spouse's unilateral waiver of retirement pay in favor of disability benefits. As in our cases, these courts proceeded from the principle that it is inequitable to allow a veteran to diminish voluntarily the military retirement benefits owed to a spouse as part of a valid and enforceable divorce judgment....
"But a new [United States] Supreme Court decision, issued since oral argument in this case, diminishes state courts' efforts to carry out state law objectives in this quintessentially state law space. In Howell v. Howell, the Supreme Court held that state law purporting to recognize a vested interest in military retirement pay is preempted by federal law, period.
*861 581 U.S. ----, 137 S.Ct. 1400, 1405-06, 197 L.Ed. 2d 781 (2017) (citing Mansell, 490 U.S. at 594-95, 109 S.Ct. 2023 ). Put another way, the veteran's ability under federal law to waive retirement pay for disability benefits, at whatever time his disability status might change, overrides (preempts!) any state law agreement he might have made, or state court judgment to which he was a party, relating to his military retirement benefits, and the parties and state court should have factored this possibility when valuing the parties' marital property ...."
233 Md. App. at 624-26, 168 A.3d at 1000-01.
Calling state courts' efforts to ensure equitable outcomes for both spouses when a military member chooses to waive retirement benefits for disability benefits "a matter of real-world logic," 233 Md. App. at 626, 168 A.3d at 1001, the Maryland appellate court continued:
"[W]e now know that military retirement benefits are always contingent, whether or not the veteran has a disability rating at the time of divorce. The possibility of a new disability rating is always out there, and parties and courts must account for (and attempt to predict the likelihood of) these contingencies when valuing military retirement pay. To be sure, the Supreme Court recognized that its holding might work as a hardship on divorcing spouses, and 'note[d] that a family court, when it first determines the value of a family's assets, remains free to take account of the contingency that some military retirement pay might be waived, or ... take account of reductions in value when it calculates or recalculates the need for spousal support.' [ Howell, 137 S.Ct.] at 1406. But of course, that doesn't help [the] Wife in this case, whose 'one-third of the marital share of [Husband]'s pension from the United States Army, the marital share ... to be calculated from June 3, 1972 to April 1, 2002' was grounded on a then-valid valuation of Husband's benefit stream, but now finds herself entitled to a one-third share of a smaller pie."
233 Md. App. at 627-28, 168 A.3d at 1002.
The Supreme Court's recognition of the law's hardship on divorcing spouses also does not help the wife in this case or the myriad former spouses who have expected to be able to rely on their settlement agreements or divorce judgments. The husband and the wife bargained for the terms of their settlement agreement, pursuant to which she would receive 25% of his military-retirement pay "without regard to any reductions or setoffs due to disability compensation." If the wife had known at the time of their negotiations that that provision would not be enforced, she could have bargained for a larger share of the marital property or a higher amount of alimony.
The Howell decision defeats the policy in favor of finality of judgments upon which litigants may rely. In Helms v. Helms' Kennels, Inc., 646 So.2d 1343, 1347 (Ala. 1994), our supreme court stated:
"Our society benefits from a judicial system that recognizes and respects the finality and definiteness of a trial court's 'final judgment' deciding what was previously disputed and uncertain. If the rights of litigants were allowed to remain unsettled indefinitely, chaos would surely result."
The USFSPA as it is currently written and interpreted by Mansell and Howell have turned this policy on its head. There is now always the uncertainty of a future contingency that will nullify a bargained-for settlement or divorce judgment. That uncertainty leaves parties and courts guessing at what might happen down the road and attempting to craft a property settlement and alimony award that is equitable to both parties based on nothing *862 more than speculation. Because it can so often create inequitable results, such speculation is not permitted when courts craft judgments in other contexts, such as personal-injury cases, contract cases, workers' compensation cases, custody cases, and so on. In fashioning a division of marital property and award of alimony based on such speculation, the military member is not immune from receiving the short end of the bargain or judgment. For example, a military member may be ordered to pay a higher amount of alimony each month or to take a lesser share of the marital property due to the uncertainty associated with awarding a portion of the military retirement to the former spouse. Often, a military member's retirement pay is "the single most valuable asset acquired by military couples." Mansell, 490 U.S. at 602 (O'Connor, J., dissenting)(citing Brief for Women's Equity Action League et al., as Amici Curiae at 18). To avoid the possibility of never receiving the retirement income to which Congress appeared to believe he or she was entitled when it enacted the USFSPA, a former spouse may be able to negotiate a settlement pursuant to which he or she receives alimony from the military member even if the former spouse remarries. The issue then arises as to whether the former spouse also receives a share of the military member's retirement pay and, if so, what portion of that pay the former spouse should receive. In short, courts and parties are left with the "chaos" of which the Helms court warned.
Attorneys representing military members or their spouses in divorce actions must be cognizant of the uncertainty now inherent in a division of marital property that includes the division of the military member's retirement benefits, even when the military member agrees that his or her spouse is entitled to a specific share of military-retirement pay.
Parties and the courts are now left to find equitable ways to award alimony and divide the marital assets of divorcing military couples in the face of judgments that may be nullified at any time. We should do everything within our power to assist our disabled military veterans, but that assistance should not come at the expense of the former spouses of those veterans. Congress needs to find a creative solution to adequately support both our disabled veterans and the former spouses who sacrificed along with them in a manner commensurate with their service to our country.

In 2016, Congress reduced the length of time a military member can remain on the TDRL from five years to three years. 10 U.S.C. § 1210(b). That change became effective on January 1, 2017, and applies to military members placed on the TDRL on or after that date.